NEW YORK STATE INVESTING COMPANY, Appellant, *v.* CHARLES BRADY, as Superintendent of Buildings of the Borough of Manhattan, City of New York, and Others, Respondents, Impleaded with GASOLINE DISTRIBUTING CORPORATION OF AMERICA and Another, Defendants.

First Department, December 11, 1925.

**Municipal corporations — city of New York — power to grant permit for gasoline filling station resides exclusively in fire commissioner under Greater New York charter, § 774, and Code of Ordinances — permission from bureau of buildings not required — amendment of Building Zone Resolution after work commenced and money expended does not bar owner — injunction against owner denied.**

The power to permit the erection of a gasoline filling station in the borough of Manhattan in the city of New York resides exclusively in the fire commissioner under section 774 of the Greater New York charter and the Code of Ordinances and, therefore, it is not necessary for the owner of property who desires to

use it for a gasoline filling station to procure permission from the bureau of buildings.

An amendment to the Building Zone Resolution passed after permission was given by the fire commissioner to erect the gasoline filling station, prohibiting the erection thereof in that location, does not bar the owner of the property or the lessee thereof from proceeding under his permit, where it appears that prior to the amendment of the Building Zone Resolution the work of installing the equipment for the filling station had commenced, a large sum of money had been expended thereon, and a twenty-one-year lease had been executed in reliance upon the validity of the permit.

Accordingly, the plaintiff, who owns property adjoining the property on which the filling station is to be erected, is not entitled to an injunction restraining its erection.

APPEAL by the plaintiff, New York State Investing Company, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 8th day of October, 1925, denying plaintiff's motion for an injunction *pendente lite* in a taxpayer's action to restrain the defendant Charles Brady, as superintendent of buildings of the borough of Manhattan, city of New York, from issuing a certificate of occupancy for a gasoline or oil service station at the premises 2 East One Hundred and Tenth street, borough of Manhattan, city of New York, or any part thereof, and restraining the defendant Thomas J. Drennan, as fire commissioner of the city of New York, from issuing a permit to have or keep at any part of the aforesaid premises combustibles or dangerous materials or permitting the maintenance of a gasoline or oil service station at the premises or any part thereof.

*Trencher & Birnbaum* [*Bernard Trencher* of counsel; *Samuel Greenbaum* and *Jonas J. Shapiro* with him on the brief], for the appellant.

*F. Wright Moxley* [*Frank C. Laughlin* of counsel; *Samuel Gottlieb* with him on the brief], for the respondent B. B. B. Gasoline Corporation.

*George P. Nicholson, Corporation Counsel* [*Elliot S. Benedict* of counsel; *John F. O'Brien* and *F. E. V. Dunn* with him on the brief], for the respondents Charles Brady, as Superintendent of Buildings, and another.

*George C. DeLacy*, for the defendant Mary B. Slevin.

DOWLING, J.:

This is a taxpayer's action (Gen. Mun. Law, § 51), brought by plaintiff, which also owns the adjoining premises known as Nos. 4 and 6 East One Hundred and Tenth street, borough of Manhattan, city of New York, to enjoin the superintendent of buildings and the

38

fire commissioner from issuing respectively a certificate of occupancy for a gasoline or oil service station at, or for any part of, the premises 2 East One Hundred and Tenth street, and a permit to have or keep combustibles or dangerous materials therein, or permitting the maintenance of a gasoline or oil selling station at any part of said premises. Against all the defendants the judgment demanded is: " Against the defendants and each of them, its contractors, builders, agents or employees from proceeding with the erection of a gasoline service station or the installation of pumps or equipment on any part of premises or at premises 2 East 110th Street, Borough of Manhattan, City of New York, and from conducting a gasoline service station at any part of premises 2 East 110th Street, Borough of Manhattan, New York City, and permanently enjoining and restraining the said defendants, its contractors, builders, employees or any other tenant of said premises or the architect for the said defendants, or any of their agents, employees or attorneys from applying for a certificate of occupancy for a gasoline service station at any part of said premises * * *."

The following facts are undisputed.

There were two applications for permission to alter the premises in question and to use them as a gasoline station. The first was made on November 5, 1924, to the bureau of buildings by Patrick J. Murray, architect, for the alteration of the building known as 2 East One Hundred and Tenth street, being four stories in height, from that of a hotel and café to the use of a hotel and gasoline station. The alteration contemplated the removal of the front and side wall of the Fifth avenue and One Hundred and Tenth street sides on the first floor, the filling in of the cellar entirely under the main building, changing of the roof of the extension to reinforced concrete and relocating the stairs from the first floor to the street. On November 13, 1924, said application was disapproved because an oil selling station in this district violated the provisions of section 151 of article 11 of chapter 10 of the Code of Ordinances. Thereafter and on November 25, 1924, said application was amended by proposing to change the floors above the first floor of said building to offices instead of hotel rooms, the alteration of the first floor to remain a gasoline filling station as before. The application had been made by Murray for and on behalf of the Gasoline Distributing Corporation of America, and the owner of the premises was stated in the application to be Mary B. Slevin. Thereafter and on or about March 17, 1925, the Gasoline Distributing Corporation was dispossessed by said Mary B. Slevin from its tenancy in said building for non-payment of rent. Thereafter and on or about March 26, 1925, this application was again disapproved on account of some

minor objections. On June 22, 1925, these objections were met by amendments to the plans and the plans were thereupon approved and a permit was issued.

The second application was made to the fire department on November 7, 1924, by said Patrick J. Murray as architect on behalf of the Gasoline Distributing Corporation of America, lessee, Mary B. Slevin being named as owner. It was proposed in said application to alter the premises used as a store and hotel previous to alterations, to a gas filling station and hotel by the installation of seven 550-gallon gasoline tanks and the removal of the front and side wall on Fifth avenue and One Hundred and Tenth street from the first floor, the cellar to be filled in entirely under the main building. The tanks were to be installed under the open arcade portion of the first story.

This application and the plans were disapproved by the bureau of fire prevention of the fire department on November 24, 1924, for the reason that a gasoline station was not permitted in a hotel, but on November 25, 1924, Murray filed an amendment to the application and plans wherein he stated that the building would be used for offices above the first floor. Thereafter the plans were again disapproved on December 6, 1924, because of the proximity of a place of public assembly to the proposed gasoline tanks, but on December 20, 1924, Murray filed a further amendment to the application by proposing to erect an eight-inch brick wall, twenty-three feet, six inches from the wall of the building of public assemblage. Thereafter and on or about January 24, 1925, the application was approved by the fire department, the certificate of approval being issued in the name of the owner of the premises as well as in the name of the Gasoline Distributing Corporation of America.

After the Gasoline Distributing Corporation had been dispossessed, the owner, Mary B. Slevin, sought another tenant for the first floor premises and entered into negotiations with one Benjamin Bookbinder and he, having assured himself that a permit for the installation of a gasoline station and equipment had been issued, engaged Murray to go ahead with the project and negotiated a lease with the owner for twenty-one years, forming a corporation for the purpose of carrying on the business. He entered into a contract for the doing of the necessary work of alteration and fitting up the gasoline station with one Tannenbaum at a cost of $17,000, which it is claimed will probably be increased by $10,000 more before the work is completed. He also put up a deposit of $5,000 under the lease which was actually executed on or about June 8, 1925, between the defendant B. B. B. Gasoline Corporation

and the owner, the premises leased to be used as a gasoline filling station. The defendant corporation paid three months' rent and deposited said security with the owner.

Up to June 12, 1925, it was lawful for a property owner or tenant to install a gasoline filling station on property owned or leased by him, but on that date an amendment to section 4 of the Building Zone Resolution of October 3, 1924, was adopted by including in the prohibited uses of property in a business district gasoline service stations. (See Minutes Bd. Est. & Apport. City of N. Y. 1924, vol. 7, pp. 6845, 6846; Id. 1925, vol. ——, p. ——; The City Record, July 14, 1925, vol. 53, pt. 7, No. 15852, pp. 5837, 5838.)

The B. B. B. Gasoline Corporation was thus in possession on June 22, 1925, of permits from both the fire and building departments for the construction and operation of a gasoline station in the premises in question. But on July 14, 1925, the superintendent of buildings revoked the approval given by him on June twenty-second, because of the amendment of the Building Zone Resolution on June twelfth, hereinafter referred to, prohibiting the further installation of gasoline service stations in a business district. He swears he would not have so acted had he known of the approval of the plans and specifications by the fire department on January 24, 1925.

Thereafter and on July 17, 1925, a third amendment to the first application and of plans filed therewith was made whereby it was proposed to use the building above the ground floor as offices. Said plans do not show the installation of gasoline storage tanks and equipment for the reason that approval had already been obtained therefor from the fire department on January 24, 1925, which has jurisdiction in respect to the installation of such gasoline station in open spaces such as that where the gasoline station in question was intended to be installed under the building of said Mary B. Slevin. The application as amended was approved by the superintendent of buildings and a permit issued for the alteration into offices as proposed.

The affidavit of the superintendent of buildings shows the practice in the city departments as follows:

" X. That the installation and maintenance of gasoline service stations are entirely under the jurisdiction of the Fire Department of the City of New York under the Greater New York Charter and Code of Ordinances of The City of New York and that it has been the custom and practice for applicants to file their application and plans with the Fire Department only, and not with the Bureau of Buildings, where there are no structures shown above the ground

other than pumps, and that no inspections of such installations are made by the inspectors of the Bureau of Buildings and no approval of any applications and plans for such installation are required by deponent as Superintendent of Buildings.

" XI. Deponent further says that it has been the custom and practice in the departments of the City government to recognize the existence of all permits and approval of plans and applications by the respective departments thereof issued or approved with relation to any work to be performed on any building or premises irrespective of the ownership or change of possession of said building or premises or of the applicant who has obtained the same, and to accept such permit or approval as running with the land.    The department concerns itself only with the legality in the performance of the work.

" XII. That deponent is of the opinion that by reason of the approval of the plans and application by the Fire Department for the installation of a gasoline service station upon said premises on January 24, 1925, and prior to the amendment of the Building Zone Resolution on June 12, 1925, that a gasoline service station could be lawfully installed and the premises put to such a use and a certificate of occupancy therefor as provided by Section 411-a of the Greater New York Charter* and Section 5 of the Building Code, lawfully issued by the deponent upon the completion of the work in accordance with said plans and application so filed with and approved by the Fire Department.

" XIII. Deponent further states that it has been the custom and practice and still is the custom and practice where applications and plans have been filed in the department for performance of certain proposed work, and the same have been approved by the department in accordance with the then existing laws and ordinances, and zoning resolution, to permit the erection, construction or installation of such proposed work and completion thereof notwithstanding any amendment to said zoning resolution that may be adopted subsequent to the approval of said plans and deponent was and is of the opinion that it was not intended by the zoning resolution or the amended resolution to prohibit such construction or installation where plans and applications therefor were filed and approved in the department prior to the passage thereof, but only was intended to affect all subsequent plans and such as had not been approved, and the proposed work could lawfully be done and installed."

The affidavit of the chief of the bureau of fire prevention in the

---

* Added by Laws of 1906, chap. 503.— [REP.

fire department of the city of New York corroborates that of the superintendent of buildings in respect to applications for permits to maintain gasoline service stations being filed with the fire department only and he further swears that inspections of such installation are made by the inspectors of his department only, who file violations or recommend approval of the work as the case may be. He says that " the permit authorizing the maintenance and operation is issued solely by the fire department upon payment of the necessary fee." He contends that the application and plans having been approved by the fire department on January 24, 1925, no further permission to commence the work was necessary, and that the amendment of the Building Zone Resolution five months later had no effect thereon.

It seems to me quite clear that the power to issue permits to maintain gasoline service stations at the time of the issue of the permit in question was solely and exclusively in the fire commissioner. By section 774 of the Greater New York charter (Laws of 1901, chap. 466, added by Laws of 1911, chap. 899, as amd. by Laws of 1916, chap. 503) the fire commissioner is given power to enforce all laws and ordinances and the rules and regulations of the board of standards and appeals in respect of, " 2. The storage, sale, transportation or use of combustibles, chemicals and explosives." Article 2 of chapter 10 of the Code of Ordinances provides by section 20 thereof, that all applications for certificates or permits required by the provisions of that chapter shall be made to the fire commissioner in such form as he shall prescribe, accompanied by such plans or drawings as he may require.

Section 11 of article 1 of chapter 10 of the Code of Ordinances provides:

" § 11. Permits. The sale, storage, use, manufacture or transportation of any combustible, inflammable or explosive article, thing, substance or compound to which this chapter applies, without a permit in writing from the fire commissioner, except where none is provided for in this chapter, is hereby prohibited. Where separate regulations require permits for two or more departments or branches of the same business conducted in the same establishment, all such departments or branches may be included in a single permit, the fee to be fixed by the fire commissioner."

Subdivision 30-a of section 1 of article 1 of chapter 10 of the Code of Ordinances, which defines an " oil selling station," provides: " Oil selling station, an authorized building, shed or enclosure, or any portion thereof, in which the business of storing and selling volatile inflammable oil to passing motor vehicles is conducted, but where motor vehicles are not stored."

Section 160 of article 11 of chapter 10 of the Code of Ordinances provides:

" § 160. Oil selling stations. A permit may be issued by the fire commissioner for premises wherein the business of an oil selling station is to be conducted and such business shall be covered, except as to fees, by the regulation on the subject of storage garages in so far as they are applicable thereto."

I reach the conclusion, therefore, that the practice of the city departments was correct, under the charter and ordinances, in so far as they recognized the sole right and authority of the fire commissioner to receive and pass upon applications and plans for the installation of gasoline filling and selling stations, and to issue permits therefor. The permit issued by the fire department on January 24, 1925, was valid and was the only permit required or authorized to allow the establishment of the gas filling station in the premises in question, and the alteration of said premises to conform to the new conditions created by the station being constructed therein.

The permit being valid, what effect had the amendment to the Building Zone Resolution thereon in so far as it prohibited the erection of gasoline filling stations in the business districts of the city? Not only had the permit been issued on January 24, 1925 (which under the practice of the city departments was deemed to apply to the premises themselves, irrespective of any change in ownership), but between that date and the time of the passage of the amendment, the present lessee of the premises relying upon the validity of the permit issued by the fire department, entered into a twenty-one-year lease of the premises and put up a deposit of $5,000 with the owner as security for its performance. It also took a lease from the city of New York for a small portion of the premises upon which the station was to be erected and paid rent thereunder. It further appears not only from the affidavit of Benjamin Bookbinder, the secretary and treasurer of the B. B. B. Gasoline Corporation, but from that of Sol Tannenbaum, a contractor and builder, that in April, 1925 (two months before the amendment to the Building Zone Resolution was passed), a contract was made whereby alterations were to be made to the premises 2 East One Hundred and Tenth street, including the installation of certain gasoline storage tanks and other equipment for which Tannenbaum was to be paid $17,000; that work had been undertaken under the contract and was in course of construction, and that Tannenbaum had been paid $6,000 on account of the contract, up to the time he made his affidavit on September 18, 1925. The corporation has also expended $3,000 for tanks and equipment up to the same date.

Under the circumstances, I think the answer must be that having incurred these obligations before the amendment, the original permit to use the premises for a gasoline filling station, for which use the corporation obtained the lease thereof, remained unaffected by the amendment.

In *City of Buffalo* v. *Chadeayne* (134 N. Y. 163) Chadeayne had been granted a permit by the common council to erect several frame buildings within the city of Buffalo. Afterward, and subsequently to his entering into contracts for their erection and the starting of the work, the common council revoked the permit previously granted, but the buildings were erected and Chadeayne was prosecuted for so doing. The Court of Appeals held that there was no power given the common council to deprive the defendant of any vested property rights in the buildings. The court said (at p. 165): " The defendant's buildings are within the fire limits as prescribed by the ordinance. He, therefore, had no right to construct them without the permission of the common council. Such permission, as we have seen, was granted on the 11th day of July, 1887, and thereby he acquired the right to proceed with the construction of his buildings and to possess and enjoy the comforts they might afford. As soon as he entered upon the construction of the buildings and incurred liabilities for the work and material, he had a property interest in them. To this right he was entitled to protection."

The court further said (at p. 166): " Having in view the purpose for which the provision was enacted, it seems to us clear that it was not intended to give to the common council the power to deprive persons of their buildings which had previously been erected, or of those which should be thereafter erected, in whole or in part, with the permission of the common council, and that its power is limited to the prevention of the erection of wooden buildings in the future without its permit." That case was cited with approval in *People ex rel. Lodes* v. *Department of Health* (189 N. Y. 187).

It follows that the order appealed from should be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., MERRELL, McAVOY and MARTIN, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.