FRATERNIDAD PHI DELTA PI, Petitioner, *v.* PLANNING BOARD OF PUERTO RICO, Respondent.

No. 36.    Argued May 3, 1954.—Decided May 24, 1954.

*Rodríguez Ema & Rodríguez Ramón,* for petitioner. *Rafael R. Fuertes* and *José E. Nieves Trilla,* for respondent.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

On March 18, 1946 the Fraternidad Phi Delta Pi, appellant herein, wrote a letter to the Planning Board of Puerto Rico inquiring whether there was any regulation in force prohibiting the Fraternity from erecting its clubhouse in the Urbanización Park Boulevard in Santurce. On March 19, 1946 the Chairman of the Board wrote a letter to the Fraternity stating that "at present there is no regulation in force prohibiting the construction of your clubhouse, since the lot on which it will be erected meets all the requirements of this Planning Board."

As a matter of fact, subdivision 7 of § 18 of the Zoning Regulations, as it prevailed in 1946 and up to 1950, provided that in R–1 Districts (such as the district where the Fraternity's house is located) "a building or premises together with its accessory buildings and uses may be used only for the following purposes . . . (7) 'clubhouses' not conducted primarily as a business." In 1950, after the Fraternity's clubhouse was constructed and occupied, subdivision 7 was amended by the addition of the phrase "by approval of the Board of Appeals" (now Planning Board).

Upon application, on October 31, 1947 the Permit Official issued a permit to the Fraternity to erect a "one-story concrete building *to be used as a clubhouse"* (italics ours) on Guerrero Street in Urbanización Park Boulevard of Santurce. It was set forth in the permit that "this building may not be occupied until a final inspection is made by this Bureau and a Certificate of occupancy issued, for which application forms are included." Thereupon the Fraternity commenced the construction of the building, which it terminated and occupied as a clubhouse without applying for or obtaining any permit whatever. On August 1, 1950 the Permit Official issued an amended permit to the Fraternity to enlarge

the building by adding a marquee. The Fraternity continued to occupy the premises. On May 2, 1952 the appellant applied to the Permit Official for a Certificate of Occupancy. On May 8, 1952 the latter refused the permit on the ground that, since the clubhouse was located in a residential zone, the occupancy thereof must be authorized by the Planning Board under subdivision 7 of § 18 of the Zoning Regulations, as amended in 1950. Feeling aggrieved by that decision, petitioner appealed to the Board on May 14, 1952. A hearing was held at which the petitioner and several opponents, neighbors of the petitioner, appeared, the latter alleging that there were constant and disturbing noises at the Fraternity which interfered with the peace of that neighborhood. The Board entered a resolution on February 11, 1953, upholding the decision of the Permit Official and denying the permit on the ground that petitioner's social activities (dances, meetings, etc.) "attract large crowds which must necessarily park their cars on the sides of the streets," and because "the general conditions of the property do not duly protect the health, security and welfare of the neighboring residences, and tend to shrink the values of the property established in the surrounding areas. These conditions consist principally of the inadequate location of the property for the purposes to which it is devoted, and the lack of sufficient area (420 square meters) for such purposes," and "that it is contrary to the public interest to issue under such circumstances the permit sought by petitioner."

On June 24, 1953 the Board overruled a motion for reconsideration filed by petitioner on the further grounds that petitioner "did not assert its right to secure a permit for the occupancy of the clubhouse in 1947, when the building was erected, and when the amendment to subdivision 7 of § 18 of the Zoning Regulations was not in force, which requires the approval by the Board in connection with buildings to be used as clubs in residential zones," and that "the

petitioner has of its own accord complied with the requirements of § 18, subdivision 7, of the Zoning Regulations, as amended, by applying for a certificate of occupancy and thereafter taking the appeal in question before this Board, after the said amendment was in force."

The petitioner appealed to this Court alleging, substantially, that in view of the provisions of subdivision 7, in view of the fact that the Permit Official issued a permit for the construction of the building to be used as a clubhouse in a residential zone, and in view of the fact of the actual investments made by appellant in the construction of the building, acting upon the Regulations and the permit issued, appellant had and has a vested right to the use of the property which cannot be retroactively impaired by the Board, and the resolution of the Board refusing the permit is unreasonable, arbitrary and prejudicial to the constitutional rights of appellant.

In 58 Am. Jur. 1034, 1035, §§ 173 and 174, it is stated as follows:

"Section 173.— . . . Zoning law amendments have been upheld in a number of cases against the contention that they operated as an impairment of vested rights possessed under the zoning law as it existed prior to the amendments. There are cases, however, in which a municipality was held not to be authorized to affect by amendment rights accrued to a property owner under the zoning regulations theretofore in existence. In several cases, the rule has been laid down that one purchasing property which has been placed in a particular classification by a general zoning ordinance has a right to rely upon its being continued in that classification unless the public welfare requires a change. In any event, in determining the validity of an amendment, as applied to a particular tract, the fact that the property was purchased in reliance upon the classification prior to the amendment may be taken into consideration. . . .

"Section 174.— . . . Although there is some authority upholding a zoning ordinance as applied to existing businesses prohibited by the ordinance, it is generally held that a zoning

ordinance may not operate to suppress or remove from a particular district an otherwise lawful business *or use already established therein.* Similarly, it has been declared that the use of real property should be held immune from a prohibiting regulation enacted by amendment of a zoning law after a use has been indulged in. There are also cases in which a municipality has been held not to be entitled to enact amendments which will unnecessarily cause injury to one who has purchased, or leased in perpetuity, or improved, property in reliance on the original regulations. On the other hand, it has been ruled that the mere fact that a prior ordinance excepted a certain tract of land from a residential district did not give the owners thereof any vested right to have the exception continued, so as to entitle them, upon that ground, to attack the validity of a subsequent ordinance repealing the former and including the tract within the residential district. Moreover, the fact that the property has been purchased or leased, or that plans have been made, with an intention to use the property for a purpose allowable under the existing zoning regulations, has been held not to prevent the application to it of a subsequent amendment prohibiting its use for such purpose. The latter rule is particularly applicable *where no work has been commenced,* but it has also been regarded as applicable notwithstanding the fact that *trivial changes* in the premises have been made and expenses incurred in *preliminary* preparations for the use prohibited by the amendment. The same result has been reached where construction has been begun, without first securing the proper and requisite permits, by an owner who knew that the district was about to be rezoned." (Italics ours.)

To the same effect as the foregoing pronouncements, see annotation in 138 A.L.R. 500, 501, *et seq.* At p. 505 of that annotation it is stated as follows:

"The revocability of municipal building permits or licenses is the subject of an annotation in 40 A.L.R. 928. It is stated therein that by the weight of authority a building permit or license may not arbitrarily be revoked, particularly where, on the faith of it, the owner has incurred material expense, but that there are a number of cases sustaining express or implied revocations of such a license or permit.

"In a number of cases the view has been taken that one who has obtained a building permit or license and has proceeded to act under it has thereby acquired a vested right which is protected against disturbance by a subsequent amendment of the zoning ordinance. *Dobbins* v. *Los Angeles* (1904) 195 U. S. 223, 49 L. ed. 169, 25 S. Ct. 18; *Sandenburgh* v. *Michigamme Oil Co.* (1930) 249 Mich. 372, 228 N.W. 707; *Coldwater* v. *Williams Oil Co.* (1939) 288 Mich. 140, 284 N.W. 675; *New York State Investing Co.* v. *Brady* (1925) 214 App. Div. 592, 212 N.Y.S. 605; *Pelham View Apartments* v. *Switzer* (1927) 130 Misc. 545, 224 N.Y.S. 56; *People ex rel. Ortenberg* v. *Bales* (1928) 224 App. Div. 87, 229 N.Y.S. 550 (affirmed without opinion in (1929) 250 N.Y. 598, 166 N.E. 339); *Wasilewski* v. *Biedrzycki* (1923) 180 Wis. 633, 192 N. W. 989.

"This view is set out in *Pelham View Apartments* v. *Switzer* (1927) 130 Misc. 545, 224 N.Y.S. 56, holding that one who secured a building permit for an apartment house upon a site where apartment houses were allowed by the zoning ordinance then in effect, and in reliance upon such permit, purchased the lot, employed an architect, had the property surveyed, and excavated the cellar, could not be deprived of the vested right thus acquired by a subsequent revocation of the permit pursuant to an amendment of the zoning ordinance, as follows: *'Where a permit to build a building has been acted upon, and where the owner has, as in this instance, proceeded to incur obligations and in good faith to proceed to erect the building, such rights are then vested property rights, protected by the* Federal and State *Constitutions. . . . While it is unfortunate that the erection of this apartment house may be distasteful to people living in the neighborhood, and while perhaps it is unfortunate that their property should be thus affected, yet the protection of such rights* [of the owner] *must be legally done, and the public officials representing the people cannot legally be permitted to change the zoning law, and cancel a permit previously issued under the original zoning act, where an innocent purchaser of real estate has in good faith acted upon such official action of the city, and has thereby acquired vested rights under his permit. . . .* It would be nothing short of confiscation, and a complete disregard of constitutional rights, if a municipality could revoke a building permit issued under the conditions as presented in this case.'

. "Likewise, in *Dobbins* v. *Los Angeles* (1904) 195 U. S. 223, 49 L. ed. 169, 25 S. Ct. 18, an amendment of a municipal ordinance prohibiting the erection or maintenance of gas works . . . . after such erection had been commenced under a permit from the board of fire commissioners, was held to be an arbitrary interference with property rights . . . . and not justified as an exercise of the police power." (Italics ours.) (See other cases discussed in 138 A.L.R. 506 *et seq.*)

In *State ex rel. Schroedel* v. *Pagels*, 43 N.W. 2d 349, it was held that a person who had purchased realty pursuant to a zoning ordinance and had expended substantial sums of money ($50,000) for plans and specifications in contemplation of building, had acquired vested rights which should be protected against a change in the ordinance for the purpose of rezoning the area, where no substantial change had been made in the nature of the surrounding area.

It is true that the universally established rule, which we adopt, is that where a permit has once been granted by an officer authorized to do so and the permitee has acted thereon and incurred expenses, the right to continue construction under such permit becomes a vested right which the municipality has no right to violate by revocation or recall of the permit (Yokley, *Zoning Law and Practice*, 2d ed., pp. 234 *et seq.*, § 100, and cases therein cited and discussed.) That general rule is essentially applicable to the circumstances surrounding the case at bar. In this case, appellant erected a building on the authority of a permit specifically providing that it was authorized to construct a building "to be used as clubhouse." That permit stated in precise terms the nature of the use of the building, that is, that permit was equivalent to authorization to use the building as a clubhouse. 'The construction had to follow a certain pattern, or structural or architectural design, according to the authorized purpose to use the building as a clubhouse. The appellant incurred substantial expenses in the construction, relying and acting upon the permit thus issued and the clear

and conclusive provisions of the Zoning Regulations, sub-division 7 of § 18 of which provided, at the time the permit was issued and the construction commenced and terminated, that buildings could be used as clubhouses in residential zones. Appellant therefore had a vested right not to have the permit revoked, particularly for the fundamental reason alleged by the Board in the instant case, namely, "the inade-quate location of the property," that is, the location of the clubhouse in a residential zone. The Board could not rely on that ground to prohibit the use of the building precisely because the law did not recognize that ground as a bar at the time the building was erected, but, on the contrary, the Regulations in force prior thereto expressly overcame the validity of that ground, since it authorized the use of build-ings for clubhouses in residential zones, and the permit authorized the construction and location of the building, for *a club*, in that particular residential zone, and on the basis of this legal authorization appellant incurred substantial expenses in the construction of the building.

It might be argued that the respondent Board did not revoke any building permit at all, but merely prohibited the use of the building. However, the prohibition of the use of the building as a clubhouse is tantamount to render-ing the building useless and the permit ineffective and practically valueless, since the building was specifically constructed to be devoted to a special use and the annulment of that special use would render null and void the purpose of the building. The prohibition of the use amounts to a revocation of the building permit.

It might also be argued that appellant, after obtain-ing the building permit, acted thereon subject to the specific requisite that it was required to secure subsequently a certi-ficate of occupancy and that in failing to secure such a certificate of occupancy appellant assumed the consequences of its own neglect, and undertook the construction knowing

that it would have to obtain a certificate of occupancy. But once the building permit was issued as drawn up, namely, authorizing the construction for a specified purpose, that is, to be used as a clubhouse, it was unnecessary to secure a certificate of occupancy for the authorization of such use had already been covered by the building permit. Moreover, in view of the provisions of the Zoning Regulations in force when the building permit was issued and the construction commenced and terminated, a special certificate of occupancy was unnecessary and was rather a ministerial function of the Permit Official. Subdivision 7 of § 18 of the Regulations to which reference has been made, specifically provided before 1950, that buildings could *be used* as clubhouses in a residential zone. Such use was already authorized by the statute. When subdivision 7 was amended in 1950 so as to authorize such use, subject to the approval of the Planning Board, that limitation meant that, as of 1950, the unlimited use of buildings as clubhouses in residential zones no longer existed, and that the Board could authorize or prohibit such use whenever circumstances so warranted. In undertaking the construction of a building subsequent to the 1950 amendment to be used as clubhouse, the builder knows that it is necessary to secure the approval of the Board for such use. But that implies further that prior to the amendment, as is the case here, the construction was undertaken in the justified belief that the Board's authorization was unnecessary.

The respondent Board contends that it was appellant itself which applied on May 2, 1952 for the permit of use, thereby abiding by the decision of the Planning Board. But since appellant had already acquired a vested right to the use of the building as a clubhouse, its action in applying for a special permit of use was erroneous and unnecessary and should not be interpreted as a waiver of its vested rights.

Our decision here does not naturally impair any possible judicial remedy which appellant's neighbors may have to

assert their legitimate interests. We are not deciding whether or not they have a right to those remedies. We confine ourselves to deciding that the action of the Planning Board in the instant case is not the appropriate remedy for the neighbors and that such action prejudices the vested rights of appellant to demand that the Board abstain from revoking the permit thus issued and from prohibiting the use of the building as a clubhouse under the circumstances here present.

The order appealed from will be reversed and set aside, and the case remanded to the Planning Board for further proceedings not inconsistent with this opinion.