# CHARLESTON.

STATE *ex rel*. W. T. JOHNSON *v*. CITY OF CHARLESTON *et als*.

Submitted May 23, 1922.    Decided May 30, 1922.

1.   NAVIGABLE WATERS—*"High Water Mark" Defined.*

"High-water mark" of streams is the point below which the presence and action of the water are so common and usual and so long continued in all ordinary years as to mark upon the soil a character distinct from that of the banks with respect to vegetation as well as with respect to the soil itself.    (p. 320).

2.  CONSTITUTIONAL LAW—*Eminent Domain—Mandamus—Munici-*
    *pal Corporations—Refusal of Building Permit Must Not be*
    *Arbitrary and Unlawful, Refusal of Building Permit*
    *Amounts to Taking Without Compensation, and Without*
    *Due Process, Mandamus Issues if Return Discloses no*
    *Defense.*

    Where a municipal ordinance requires the owner of
    land to obtain a permit from the city building inspector before
    he can lawfully erect a building thereon, and the land owner
    has fully complied with all the requirements of the ordinance,
    and the rules and regulations of the city in respect thereto;
    the city authorities cannot arbitrarily refuse such permit.
    Some lawful reason based on the state's delegated police
    power must be given for refusal; otherwise, the owner is
    deprived of the beneficial use of and dominion over his land,
    and the refusal is tantamount to taking the land without
    compensation and without due process of law. Mandamus
    will issue to compel the city to grant such building permit,
    where its return to the alternative writ discloses no valid
    reason for its refusal.    (p. 320).

3.  MANDAMUS—*Condition Held to Warrant Mandamus to Com-*
    *pel Issuance of Building Permit.*

    In such case, where the only reason for refusal is that the
    situs of the proposed building is below "high-water mark" of a
    navigable stream and within its banks, and it appears that
    such situs is on the top of the bank and higher than a paved
    public street and as high as other houses erected thereon, and
    is clearly above high-water mark, mandamus will issue to
    compel the issuance of such permit.    (p. 323).

4.  NAVIGABLE WATERS—*In Absence of Special Power, Municipal*
    *Corporation on Navigable River Cannot Interfere with Land-*
    *owner's Riparian Rights.*

    In the absence of some special right or power conferred upon
    it by the Legislature, or included in its charter powers so
    conferred, and applicable to real property without reference
    to its location, a municipal corporation bordering on a navi-
    gable river or including a portion thereof within its limits,
    cannot interfere with the riparian rights of an owner of land
    adjoining such river, which are subject only to the rights of
    the state and the right of navigation regulated by the federal
    government, nor prevent the exercise thereof.    (p. 323).

Original proceeding by the State on the relation of W. T.
Johnson against the City of Charleston and others, for writ

of mandamus to compel the issuance of a permit to erect a dwelling house.

*Writ awarded.*

*Blue & McCabe,* for relator.

*Donald O. Blagg,* for respondents.

LIVELY, JUDGE:

Relator is the owner of a lot of land lying within the corporate limits of the City of Charleston, between Columbia Boulevard and the low-water mark on the Kanawha river and extending from a point near the intersection of Pennsylvania Avenue with Columbia Boulevard to a point near Berkeley Street. Columbia Boulevard is a paved street on which the lot of relator abuts. The paving assessment against his lot in favor of the city, and which is now a subsisting lien thereon amounts to $5,736.93. The Boulevard runs near the top of the river bank, but there is room for the construction of a building on the top of the bank facing the Boulevard by extending the rear portion of the building over the break of the bank and supporting it by pillars. Relator desires to improve his lot and render it productive by the erection of a two story frame dwelling as indicated, but his application for a building permit therefor has been refused by the proper municipal authorities, and he seeks by this writ to compel the issuance to him of a permit to erect the dwelling house at the point designated in accordance with the plans and specifications filed with his application for a permit. The petition avers that relator has tendered the proper fees and has strictly complied with all rules and regulations of the city relating to applications for building permits, and that the only reason the city and its council have for withholding the permit is that they desire that relator's land should remain unimproved, open, unoccupied and free from dwelling houses thereon, which, it is averred, amounts to taking relator's land without just compensation, and without due process of law.

The return admitted as true the allegations of the petition, except the ninth paragraph thereof which is to the effect that

the building proposed is to be erected above high-water mark of the Kanawha river, and outside of that part of the bank which is under the jurisdiction of the United States government; whereas, respondents aver, on information and belief, that the proposed building is to be constructed in whole or in part within the banks of the river, and below high-water mark, and that relator has also applied to the proper authorities of the federal government for permission to erect the building. A letter from the United States engineer's office accompanied by a blue print showing the location of the proposed building, and asking if the city has any objections to a permit being granted is filed with the return; which letter indicates that the city's objection, if any, should be based on possible interference with any plans or works which the city authorities have in view.   The blue print filed with the return shows that the building is to be erected on an elevation slightly higher than the curb of the Boulevard and on top of the bank, and thirty-five feet above the pool stage of the river. It is not clear what is meant by the phrase "high-water mark" as used in the return.   If it is meant to designate the highest point to which the river has been known to rise, then the other houses erected along the Boulevard would be subject to the same condemnation, and petitioner would be discriminated against by refusal.   High-water mark of fresh water streams where there is no ebb and flow of tide is usually construed as the line in the river bank reached by the water when the river is ordinarily full and the water ordinarily high, and not the highest point to which the water has been known to rise in time of extraordinary freshet. Farnham defines it as "the point below which the presence and action of the water are so common and usual and so long continued in all ordinary years as to mark upon the soil a character distinct from that of the banks with respect to vegetation as well as with respect to the soil itself." Farnham on Waters and Water Rights, Vol. 2, p. 1461, sec. 417.   See Words & Phrases, Vol. 4, p. 3289; *Ephraim Creek C. & C. Co. v· Bragg,* 75 W. Va. 70.   It is evident that the proposed location of relator's dwelling house is not below high-water mark.   Ou

the contrary it affirmatively appears from affidavit filed that it is many feet above high-water mark. Whether the location is wholly or in part within the banks of the river, and under the jurisdiction of the federal government, is not very clear. Relator has also applied to the proper federal authorities for permission in order to meet any objections or complications which may arise from that source. Inasmuch as the proposed work lies within the corporate limits of the city, the federal authorities have laid the matter before the municipal authorities to ascertain if there is any valid objection on the part of the city to federal permission. By the return to the alternative writ the city seeks to avoid issuance of its permit for the erection of the building on the ground that it has no jurisdiction, claiming, on information and belief, that the proposed site is below high-water mark and within the federal jurisdiction. Then why refuse assent? It appears that it has no other objections to the building; the return discloses none. Refusal to assent would likely result in a like refusal on the part of the federal authorities. Hence, refusal on the part of the city might result in preventing relator's land from being developed and improved. It would be useless to him. The petition avers that it is valuable only for the purpose of erecting dwelling houses thereon, a fact well known to the city authorities. The petition also avers that the building regulations require a permit from the city for the erection of a building anywhere within the city limits. So, it seems to be immaterial whether the proposed site is wholly or in part within the banks. The city has assumed jurisdiction, supervision and control over the erection of any building anywhere within the city limits. It has refused its permit without legal reason therefor, thus preventing the only use to which relator's land can be put, and practically taking the land without just compensation and without due process. *Fruth* v. *Board of Affairs*, 75 W. Va. 456. The land is taxed for state, county and city purposes, and a heavy street paving assessment is a lien against

it.    It is carrying its burden of taxation and is rendered valueless by the arbitrary action of the city council.

Municipal ordinances governing the erection of buildings are justified under the police power of the state by which the legislature may directly or indirectly provide for the public health, morals, safety, convenience or prosperity. There is no suggestion that relator's proposed dwelling would be dangerous to the safety, health or convenience of the public.    All of the building regulations have been complied with.    No reason for refusal of the permit is given, except that above suggested namely, concurrent federal control.    From the blue print filed with the return which shows the location of the building on the bank with its foundation higher than the street, it is apparent that the city has jurisdiction to grant or refuse the permit.    But in the absence of some special right or power conferred upon it by the Legislature, or included in its charter powers so conferred, and applicable to real property without reference to its location, a municipal corporation bordering on a navigable river or including a portion thereof within its limits, cannot interfere with the riparian rights of an owner of land adjoining such river, which are subject only to the rights of the state and the right of navigation regulated by the federal government, nor prevent the exercise thereof. No good reason being interposed by the return for the refusal of the permit, we will grant the prayer of the petition and order the peremptory writ of mandamus to issue.

*Writ awarded.*