# CHARLESTON.

STATE ex rel F. E. HOFFMAN et al. RELATOR

TOWN OF CLENDENIN et als., RESPONDENTS.

Submitted December 15, 1922.   Decided December 5, 1922.

Opinion Filed January 10, 1023.

1.  MUNICIPAL CORPORATIONS—*Municipality Held Without Arbitrary Power to Refuse License to Operate Pool Tables Within Corporate Limits.*

    Sec. 35-a of chap. 109, Acts 1921, does not given the common council of a municipality chartered under chap. 47 of the Code, arbitrary power to refuse to grant license to operate a pool table within the corporate limits.   (p. 620).

2.  MANDAMUS—*Lies to Compel Issuance by Municipality of License to Operate Pool Table, and That Discretion Not Abused.*

    When such license has been arbitrarily refused by the common council, and its discretion abused in that regard, mandamus will issue to compel the issuance of such license.   (p. 621).

3.  SAME—*Burden on Municipality to Show Reasonable Grounds for Refusal of License to Operate Pool Table, and That Discretion Not Abused.*

    In a mandamus proceeding to compel the issuance of license to operate a pool table in a municipality where it appears thaat the relator has complied with all the requirements of law relating to the application for such license, the burden of showing reasonable grounds on which the refusal is based, and that the licensing authority has not abused its discretion, rests upon the respondents.   (p. 621).

4.  NUISANCE—*Keeping Pool Tables not a Common Nuisance per se.*

    The business of keeping pool tables for public use and resort is not a common nuisance *per se.*   (p. 622).

Mandamus by the State, on the relation of F. E. Hoffman and another, against the town of Clendenin and others, to

compel the mayor and council defendants to issue to plaintiffs a license to maintain and operate pool tables.

*Writ awarded.*

*Horace S. Meldahl,* for relators.
*D. W. Taylor,* for respondents.

LIVELY, JUDGE:

Petitioners, F. E. Hoffman and H. P. Hammock, pray for mandamus to compel the mayor and town council of the town of Clendenin to issue to them license to maintain and operate pool tables in the rear of their restaurant room at the corner of Piedmont Avenue and Third Street. The first application did not specify the place at which the license was desired, and was refused October 19, 1922. Another application, which is in proper form, accompanied by the license fees, was "laid on the table," December 7, 1922. Petitioners aver that they are of good moral character, have violated none of the ordinances of the town; that the place at which they desire to operate the tables is a proper place for that purpose; and that they have complied with all of the conditions and requirements of the ordinances and laws relating to the granting of such license; that other persons are operating such tables under licenses issued by the municipal authorities; that petitioners have expended large sums of money in purchasing tables and in preparing to operate the same, encouraged to do so by members of the common council; and that the common council has, arbitrarily and without just or reasonable grounds, refused to grant them the license applied for.

The mayor and a majority of the council in their return say: (1) That upon information and belief a former council, about 10 years ago, passed an ordinance to the effect that no public pool room or saloon should be licensed within certain defined limits within the municipality, and that the location of petitioners' room as stated in the application is within that area; that said ordinance with other town records was destroyed by fire, but that the ordinance is yet in force and effect; (2) that petitioners have violated the ordinances of

the town by keeping their pool room open for public use and resort, in defiance of the town authorities, pending their application for license during the months of October and November; (3) that the place at which the business is to be conducted is not a proper place for such business, in that it is upon the principal street of the town, the inhabtiants of which are largely church going country folk who are opposed to the operation of pool tables where their children will come within the influence thereof, and that by reason of its proposed location will be detrimental to the welfare and good morals of the inhabitants. They deny that in refusing the license applied for they have acted arbitrarily, and illegally discriminated against petitioners and in favor of others similarly situated.

Petitioners deny that the purported ordinance was ever enacted, and therefore could not have been destroyed by fire; they deny that during the months of October and November they unlawfully maintained for public use and resort certain pool tables in defiance of the town authorities; and deny that the majority of the people are opposed to the operation of the tables at the place designated in their application, or that the place, by reason of being upon the principal street, is an improper one, or will be detrimental to the good order, welfare and morals of the inhabitants.

Respondents moved to quash the alternative writ: (1) because the statute, sec. 35-a chap. 109, Acts 1921, vests discretion in the council either to refuse or grant pool table licenses; and the council having exercised its discretion the courts cannot interfere; (2) that it does not appear from the petition that a license has been refused.

The petition charges that application in proper form was presented to the council, dated November 15th, considered by the council on the 17th following, and no action taken thereon, and finally on December 7th was "laid on the table." It further charges that license has been arbitrarily refused by the council. The return admits the refusal, and justifies the same on the grounds before set out. But looking to the petition alone, we think the necessary and logical conclusion from

the allegations is that the action of the council in laying the application on the table was tantamount to refusal. We have heretofore held that said sec. 35-a does not confer on the council arbitrary discretion to grant or refuse license for the several kinds of business therein enumerated. *State ex rel Hamrick* v. *County Court,* decided this term. The keeping of pool tables for public resort and use is a legitimate business recognized as such by state policy. Reasonable regulation may be prescribed for its conduct, but because it is regulated it does not necessarily follow that the business may be arbitrarily prohibited. Theatres, hotels, restaurants, drug stores, taxi-cab stands, are likewise subject to regulation, but the lawfulness of such enterprises cannot be questioned. Regulation of a business does not stamp it as unlawful, or as partaking of the nature of a nuisance. Arbitrary power to prevent the carrying on of a lawful business would render the act conferring that power unconstitutional and void. *State ex rel. Hamrick* v. *County Court,* 92 W. Va., decided October 31, 1922; *Houvouras* v. *Huntington,* 90 W. Va. 245. There must be some good cause for refusing a license to conduct a legitimate business, and where the licensing officers, after examination and consideration, honestly and impartially made, can point to some reasonable basis for refusal, their judgment and discretion will not be disturbed by the courts. Discretion in a court or officer is not an unlimited power; it must be governed by rule, it must not be arbitrary, vague and fanciful but legal and regular. *Rex* v. *Wilkes,* 2 Burr. 2527. In all cases, where by law, common or statute, a subject is referred to the discretion of a court, that must be regarded as a sound discretion, to be exercised according to the circumstances of each particular case. *Com.* v. *Wyatt,* 6 Rand. 694; *Rose* v. *Brown,* 11 W. Va. 142; *Welch* v. *County Court,* 29 W. Va. 63; *Abbott* v. *L'Hommedieu,* 10 W. Va. 627. Where anything is directed to be done according to the discretion of the person designated, the law intends it to be done with sound discretion and according to equitable principles, and a court has power to redress wrongs which have been committed by an abuse of discretion. *People* v. *N. Y. Su-*

*perior Ct.,* 10 Wend. (N. Y.) 285. Before a court will inter-
fere there must be a clear abuse of discretion. Keeping
these principles in mind, can we say that the respondents
have abused their discretion? Have they refused arbitrarily
and capriciously? Let us examine the three reasons given for
refusal. They say, upon information and belief, that an or-
dinance was passed years ago, the record of which was de-
stroyed by fire, prescribing a fixed area in which no pool
room should be licensed, and that relators' proposed location
is within that area, and that such ordinance is still in effect
and not repealed. The answer to the return specifically de-
nies that such ordinance was ever enacted. No attempt is
made to sustain the information and belief of respondents.
The burden is upon them, and they have failed to carry it.
One affirms, upon information and belief, the other flatly de-
nies. The next ground is that petitioners are not proper per-
sons to whom license should be issued, because pending their
application in October and November they operated their
pool room in open defiance of the town authorities. This is
likewise denied, and no evidence taken, no attempt made to
sustain the charge. It is apparent that this reason is more
fanciful than real, as respondents say in their return that
they are "not unwilling, except for the unlawful acts of pe-
titioners aforesaid, to grant to petitioners a license to main-
tain a public pool room within said town outside of the re-
stricted area, and away from the principal streets of said
town." If the "unlawful acts" of respondents would render
them improper licensees in the restricted area, it would also
render them unfit for license anywhere in the town. It is
evident that the alleged "unlawful acts" do not weigh very
heavily in the decision for refusal.

The remaining ground for refusal is that the location of
the pool room is on a principal street, and is not a proper
place because the church going inhabitants of the town are
opposed to the operation of pool tables where their children
will come under its influence, and hence its proposed location
will be detrimental to the good morals of the inhabitants.

The business of operating pool tables for public use and

resort is a legitimate business, and not *malum per se.* It is a subject of regulation, it is true, but that does not make it inherently bad nor detrimental to the morals of the community. Theatres, picture shows, drug stores, restaurants and like businesses are subject of governmental regulation. Under the powers delegated to 'a municipal corporation organized under chap. 47 of the Code, the council has power, among other things, "to abate or cause to be abated anything which, in the opinion of a majority of the whole council, shall be a nuisance," and should a licensed pool room degenerate into a nuisance in its operation and conduct, it may be abated by the council; but such rooms are not nuisances *per se.* Pool and billiard tables are installed in Y. M. C. A. buildings, social clubs and private homes, and in some of the recreation and social rooms of the churches. The policy of our laws is to authorize the operation of such tables as a revenue measure. Can a common council at the inception of an application, conclude that it would be to the moral detriment of the citizens of the municipality for a pool table to be operated? If the licensee violates any of the statutory regulations, such as permitting any person under the age of 18 years to play at the tables or to loiter in the room, or permits any one to bet anything of value upon the game played, or bring or permit to be brought into the house where the table is located intoxicating liquors, he is liable not only to punishment as for a misdemeanor, but to forfeiture of his license, and in addition thereto no other like license shall be issued to him during a period of one year. The statute throws a safeguard around the proper conduct of the business. But it is argued that the particular place where the licensee is to operate, being on the principal street, makes it an improper place for the reason detailed, that is, detrimental effect upon the morals of the people of the town. We cannot see how the location would affect the conduct of the business. As above suggested, the presumption is that the business will be conducted in an orderly and lawful manner, and when so conducted it meets the requirement of the law, and is a lawful business. Moreover, where a municipality has power to grant, refuse or revoke licenses to carry on a lawful business

it is an implied condition that it shall adopt reasonable ordinances, not contrary to the laws of the State or constitution, under which such power may be exercised, and under which it must treat all persons alike who apply for the same, and not arbitrarily refuse any such license, at its whim or pleasure. *Houvouras* v. *City of Huntington,* 90 W. Va. 245; *State ex rel. Haddad* v. *City of Charleston,* 92 W. Va. —, 114 S. E. 378; *State ex rel Hamrick* v. *County Court,* 92 W. Va. p.—, decided October 31, 1922. While it is claimed that such an ordinance has been passed, marking out a restricted area in which no pool table license will be granted, and which area includes the location named in petitioners' application, no effort has been made to substantiate that claim, and it is flatly denied, as above stated. This ground of refusal is based on the assumption that the pool tables will be operated in violation of the statutory restrictions, and being in a public principal street, will, therefore, be detrimental. The bare fear that it will be unlawfully conducted is not sufficient. On what basis does this fear rest? We find none. It is arbitrary and fanciful. Should such fear be materialized by an actuality in the operation of business, a revocation is authorized by the statute.

The return shows no reasonable ground for refusal of the license, and the writ will be awarded.

*Writ awarded.*