# CHARLESTON.

STATE *ex rel,* ALBERT NUNLEY *v.* MAYOR AND CITY COUNCIL OF THE CITY OF MONTGOMERY.

Submitted May 15, 1923.   Decided June 5, 1923.

1.   MUNICIPAL CORPORATIONS—*City Council Held not Authorized to Arbitrarily Refuse Application for Building Permit for Garage on Assumption that, from Plans Filed, a Public Garage Indicated.*

Under an ordinance of a city requiring persons desiring to erect any building, within the corporate limits of said city, to first obtain from the city council a permit, and requiring such persons to file plans showing kind and character of building, a city council has no authority to arbitrarily refuse an application for a permit to erect a garage on applicant's property, on the assumption that from the size of the building contemplated as shown by the plans fixed, a public garage is indicated.   (p. 194).

2.   MUNICIPAL CORPORATION—*City Council Not Authorized to Regulate Building of Garages and Restricted Locality in Absence of Empowering Ordinance.*

A city council has no authority to regulate the building of garages and restrict the locality in which they are permitted to be built, otherwise than by an ordinance of said city fully prescribing regulations of the same, and definitely setting forth the restricted area.   (p. 196).

94 W. Va.

3. EMINENT DOMAIN—*Limitation on Owner's use of Property Cannot be Imposed for Benefit of Other Property Owners.*

A limitation upon the owner's use of his property cannot be imposed by law for the benefit of other property owners. (p. 197).

4. MUNICIPAL CORPORATIONS—*Common Council has no Inherent Power to Regulate or Restrict Erections of Buildings Within Corporate Limits.*

The common council of a city has no inherent power to regulate or restrict the erection of buildings within the corporate limits of such city, nor can such common council adopt a policy regulating and restricting the same otherwise than by an ordinance. (p. 197).

5. MANDAMUS—*City Council Required to Issue Building Permit Where Arbitrarily Refused.*

Where a municipal ordinance requires the owner of land to obtain a permit from the city council before he can lawfully erect a building thereon, and the land owner has fully complied with all the requirements of the ordinance, and the rules and regulations of the city in respect thereto; said city council cannot arbitrarily refuse such permit, and mandamus will issue to compel the city council to grant such building permit, where its return to the alternative writ discloses no valid reason for its refusal. (p. 197).

Original mandamus by the State on the relation of Albert Nunley against the Mayor and City Council of the City of Montgomery, to compel defendants to grant a permit to build a garage.

*Writ awarded.*

*L. Burke O'Neal,* for relator.
*Dillon, Nuckolls & Mahan,* for respondents.

McGINNIS, JUDGE:

Relator, Albert Nunley, prays for mandamus to compel the Mayor and City of Montgmoery to grant a permit to relator to build a garage on lot No. 10 in Block 14 facing an alley in the rear of said lot to extend 40 feet on said alley and 20 feet on Madison Street on Fifth Ave. of said City.

Relator alleges that he is the owner of said lot; that it is located at the corner of Fifth Avenue and Madison Street, and is 40 feet wide and 94 feet deep; that on said lot is lo-

cated a four room dwelling, facing Fifth Ave., to which is
being added a kitchen, pantry, and bath room; that on the
3rd day of April, 1923, he filed with the council, at its reg-
ular meeting, an application for a permit to build said
garage, which application shows the dimensions and location
of said garage so sought to be erected, and the material
which he proposes to use in the construction of the same,
and the manner in which it was to be built; and filed with
said application a map or diagram showing its location, in
reference to streets and alleys; that at said meeting of the
council, his application was referred to a building commit-
tee, composed of three members of said council, and the com-
mittee reported to the council, on May 1st 1923, as follows:

> "From the reading of the application, and size of
> garage wanted, indicates a public garage and the
> building    committee    reject    application    on    this
> account."

This report was adopted and approved by the council and
the permit refused.

Relator further says that the said city has no building
code, neither has it adopted or passed any regulations affect-
ing the erection of garages or other buildings, except on cer-
tain streets, known as the "fire zone"; that relator's lot,
upon which he proposes to erect said garage, is not in the
"fire zone", the same being located several blocks therefrom.

Relator further alleges that he is the owner of a Paige
touring car, and contemplates the purchase of a truck to be
used in his grocery business; that he desires to use said ga-
rage to store his own cars in, and the cars of two of his
tenants both of whom own cars and reside in said city; that
numerous garages have been permitted, by said council to
be built in the same block, and in the immediate neighbor-
hood of the point where the relator seeks to build the garage
in question.

The present charter of the City of Montgomery was passed
by a special act of the Legislature of 1919, and is Ch. 3 of
said act. In that act, the city authorities were granted cer-
tain powers among which are:

"To prescribe and enforce all regulations affecting the erecting, repairing or removal of all buildings and structures, and to require permits to be obtained for such buildings, plans and specifications thereof to be first submitted to the building inspector, and to prescribe regulations controlling the erection of such buildings and to secure the health and safety of the public."

This statute, which is the organic law of the municipality, may authorize the city council to pass an ordinance regulating the building of garages and other buildings within the corporate limits, and reasonably limit the building of same within certain areas, but, in this case, it appears that no ordinance has been passed by the City Council so regulating and limiting the building of garages in the city limits, the only ordinance in this case shown to have any bearing upon this subject is as follows:

"Persons desiring to erect any building shall first obtain from the council a permit and file plans showing the kind and character of building."

This ordinance applies to any building and the prerequisite to the obtaining of the permit, under this ordinance, is to file plans showing the kind and character of building. There is no discretionary power either expressed or implied to refuse any application for any building under this ordinance. Under this ordinance, there are no regulations as to the character or size of the buildings, no restrictions as to locality, no distinction as to public or private buildings, all stand on the same plane.

Relator has complied with the requirements of this ordinance by filing with his application, plans showing kind and character of the building he desires to erect.

The charter of the city grants to the city council the power:

"To prescribe and enforce regulations controlling the erection of such buildings and provide for and regulate the building of all houses and other structures."

In this case, it appears that the city has attempted to enforce regulations without having prescribed them. The Council, in its return, gives, as its reason for refusal of the permit, that the size of the building indicates a public garage. The record in this case discloses that numerous garages, both public and private, have been built within the corporate limits of the city.

Respondents in their return give other reasons for refusing the permit, admitting that the city has not adopted a building code prescribing and regulating the erection of garages in the residential districts of the city. Nor has the common council, by an ordinance, prescribed any regulations of the same ,and alleges that it has been the policy of the said city and the council not to permit any buildings erected which would necessarily greatly increase the fire hazard to the residents and property of the residential portion of said city. That the refusal of relators permit was a lawful and reasonable exercise of the police power of the city, and respondents, after setting up in their return, certain facts relative to the refusal of the permit by the city council, assign the following reasons why the writ should not be awarded:

"(1)    Because it would be violating the rule and policy of the council to permit a public garage to be erected in the residential portion of the city and used solely for private residences.

"(2)    That it would greatly increase the fire hazard and subject the residence properties in the block to destruction by fire, all of which are frame buildings.

"(3)    That for the public to approach the alley from Madison Street to occupy said garage as a place for the public to store cars, would render it more or less hazardous and dangerous to life to the public in traveling Madison Street which is continually more or less congested.

"(4)    That a public garage 40 feet long, occupying the entire width of the applicant's lot, cut up into compartments to be used by the public in storing automobiles, would be unsightly and very obnoxious and objectionable to the residents of said block.

94 W. Va.

"(5) Because only applicants for private garages have been permitted in the residential part of the city, especially in the blocks near to and contiguous to the said Block No. 14, and it being the long determined policy of the council not to permit public garages in that portion of the city and especially not against and over the protests of the citizens generally in that particular locality."

The only manner by which the city council can adopt a policy binding upon its citizens whereby it regulates the construction of garages either public or private, and restricting the locality in which they may be built, is by an ordinance definitely setting forth the regulation thereof, and describing the locality in which they are prohibited from being built.

The objection that the garage sought to be built by relator is that the plans indicate a public garage, and under the established and well defined policy of the city, is not authorized to be built in the residential district; is not well taken for the reason that the garage described in the record in this case and the manner in which it is to be used surely does not make of it a public garage. It was to have four stalls, two of which were to be used by the relator, and one by each of his two tenants, each stall will doubtless have a separate door. Thus it will be occupied as a private garage by each of the persons who use it; under these circumstances and conditions it could, in no sense, be classed as a public garage.

We fail to see how the mere storage of automobiles would increase the fire hazard. It is doubtless true that a public garage where oils and inflammable gas are stored, and filling stations are operated and repairs made, if allowed to be built and operated, would increase the fire hazard in the neighborhood in which it is operated, but the mere storage of an automobile certainly would not be more hazardous, in reference to fire, standing in a garage on a concrete floor, than it would if left standing on the streets, and yet in the most densely populated streets of our cities we see thousands of them, both standing and moving, yet they rarely, if ever, catch on fire, or communicate fire to the buildings along the streets where they stand or move, this is common knowledge

which every observing man must know, and, knowing these facts, we do not think the fire hazard would be increased to any appreciable degree, by storage of cars in the kind of garage for which the permit is refused by the city council.

The third reason set forth in respondent's return, refers to the "more or less" congestion of Madison Street, and that it would render it "more or less' hazardous and dangerous to the public in traveling Madison Street, and in entering the alley from Madison Street to occupy said garage. This reason is uncertain and equivocal. Does it mean that the erection and operation of this garage would render it more hazardous and dangerous to life, or does it mean it would render it less hazardous to life? The relator appears to have understood this reason for refusing the permit to be, that it would render it more hazardous and dangerous, and has flatly denied it, and·alleges that, "The street adjoining the lot upon which the site of the garage is located is as wide as any other street in the city, and that there is very little travel over it."

The fourth reason is that the garage would be unsightly, very obnoxious and objectionable to the residents of said block. This reason is fully discussed in the case of *Fruith* v. *Board of Affairs,* 75 W. Va., 456. Judge MILLER, in delivering the opinion of the court, says, referring to sec. 118 and 128. of Freund on Police Powers:

> "The latter sections say, in accordance with the holdings of the courts everywhere, that mere beauty and symmetry of streets or for mere asthetic purposes, having no reference to the safety, health and morals or general welfare of the community at large, the state may not under the police power regulate or control the use by the owner of private property."

*State ex rel Graham Sale* v. *C. O. Stahlman et al,* 81 W. Va., 335, says in this connection:

> "Nor can it be imposed to effect symmetry of the streets or section."

The fifth reason assigned for refusing the permit, has sub-

stantially been given in the first reason, and has been dis-
cussed above, and refers to the policy adopted by the council
in reference to the building of public garages in the resi-
dential part of the city, and further says, in effect, that the
erection of this garage is "against the protests of the citi-
zens generally in that particular locality."

In *State ex rel Graham Sale* v. *C. O. Stahlman et al,* 81 W.
Va., 335, the court, in its opinion by Judge POFFENBARGER,
referring to that case, and the principals involved in that
case, on this point, are involved in this case, says:

> "The power and authority over relator's prop-
> erty, claimed by the city, if allowed by law, would
> be a serious restraint upon his right of use and en-
> joyment. It cannot be imposed for the benefit of
> adjacent or neighboring property owners. *Eubank*
> v. *Richmond,* cited. Nor can it be imposed to effect
> symmetry of the city, street or section."

Again it was argued by respondent's counsel that the city
council has the inherent power, without an ordinance, to
regulate buildings and the purpose for which they are to
be used, and the locality in which they are to be built. We
do not think that this proposition is seriously contended for,
as there are no authorities cited in support of it.

None of these reasons appear to have been given or as-
signed at the time the application for the permit was pre-
sented to the city council, and if all these reasons had been
assigned at that time, said council would not have been justi-
fied in refusing the permit. It had granted permits for other
garages in the residential part of the city.

The relator had fully complied with the ordinance regard-
ing permits to erect buildings. The city council had passed
no ordinance of a general nature restricting or regulating
the building of garages in any part of said city, and the
action of the city council, under the facts and circumstances
in this case, was arbitrary and discriminatory.

It is not doubted that the common council of the City of
Montgomery has the power, under its charter, to pass an
ordinance requiring all persons desiring to erect buildings

within the limits of said city to obtain a permit from the city council and require plans, showing kind and character of said building. The question here is whether or not the council has the right, under such ordinance, to refuse such permit when all the requirements of that ordinance have been complied with, on the ground that they are of the opinion, from size as shown by the plans, that the building is to be a public garage, and that pursuant to a policy of long standing in the city, no public garage, or garages for hire and storage of cars were allowed to be built within the residential part of the city. An incorporated city speaks by its ordinances, and until there has been some well defined regulation or restriction governing all persons similarly situated, locating the area in which garages may be built, the council has no right or authority to refuse a permit to build a garage of any kind anywhere within the city limits.

The policy adopted by the council in this case is apparently too elastic to be equitable, and too impossible of construction, and in the enforcement of it, is too open to abuse. The council admittedly has allowed, and will permit private garages to be erected in the residential parts of the city, but it impliedly says that the city council has the power to restrict the use of them exclusively to their owners, that the owners have no right to let or lease them to anyone else for the storage of cars. This construction of the policy of the city council is too absurd to elicit serious consideration or refutation.

The argument presented by the learned council for the respondent and the authorities cited by him, are chiefly in support of the ordinance passed by the city council requiring building permits. That ordinance is not attacked, but the manner in which it was enforced in this case is what is complained of by the relator. We have examined the authorities cited by the respondent's counsel and each of them support the doctrine that a city council, under the police power, may pass an ordinance regulating and restricting the construction of buildings within its corporate limits, under the proper grant of power, by the legislature, but this proposition is not

denied, however, it here appears that the city council has failed to pass such an ordinance.

For reasons stated a peremptory writ of mandamus will be awarded agreeable to the prayer and motion thereof.

*Writ awarded.*