## Huetsch v. Grove.

*Zieber & Snyder*, for plaintiff.

*John G. Rothermel*, city solicitor, for defendant.

SHANAMAN, J., December 5, 1930.—The City of Reading, a city of the third class, by ordinance dated April 29, 1925, ordained that it should be unlawful to erect or maintain a tank or other device for the storage of gasoline within the city unless a permit therefor be granted by the Bureau of Building Inspec-

tion. The ordinance contained regulations to the effect that no pump or other device for the furnishing of gasoline should thenceforth be erected outside of the building line of any street, and that no tank or filling station should thereafter be erected or maintained within twenty-five feet of any dwelling house. The plaintiff, Walter E. Huetsch, on August 4, 1930, made formal application to the building inspector for a permit for a tank and filling station on his premises at Twelfth and Pike Streets, and, being refused a permit, petitioned the court of common pleas for appropriate mandamus to the building inspector. The respondent answered, and the complainant demurred. On these pleadings we must decide the suit.

Paragraph four of the petition avers the application for the permit. Paragraph four of the answer defends on the ground that the permit was refused under the police powers of the city and in the interest of public safety, because the erection will constitute a traffic, fire and explosive hazard, due to the proximity of a large public playground directly across the street from the proposed station. "The return [in a mandamus proceeding] should be positive, explicit, and responsive, in its recital of facts, and stated in a specific and substantial but not argumentative manner, which upon a fair and reasonable construction may be called certain without recurring to possible facts that do not appear, or that are left to inference:" Douglas v. McLean, 25 Pa. Superior Ct. 9, 14. People v. Highway Commissioners, 279 Ill. 542, 117 N. E. 56, accord. Paragraph four of the answer does not meet this standard and leaves too much to inference. To say that it will prove a traffic, fire and explosive hazard is argumentative and uncertain. It may or may not prove to be such, like any other of the numerous selling stations legitimately purveying gasoline to motorists within the city. Much depends on the manner in which the station is maintained and on the development of conditions in the immediate neighborhood.

Furthermore, the averment of future nuisance does not of itself defeat the right to a permit. " 'If the right of the applicant to erect the building for which the permit is sought is otherwise absolute, it is no ground for the denial of the permit, or of a mandate to compel the issuance, that the applicant intends to put the buildings, when erected, to an improper use; the question as to the legality of the alleged intended use must await determination in proper proceedings after such use is attempted to be made of the building.' . . . It may be that those in interest can make out a case which will result in equitable relief, and prevent the doing of the act complained of, but even if an injunction was granted, it would be directed to the use of the building and not to the structure itself. . . . The sole question here is the right to the permit. If it was wrongfully refused, the writ should be granted; for the mere fact that it may be useless to the relator is no reason for refusing to issue it:" Coyne v. Prichard, 272 Pa. 424, 428. The above decision was cited with approval in Wright v. France, 279 Pa. 22, 25, 26, as follows: "In the recent case of Coyne v. Prichard, 272 Pa. 424, we determined that where an ordinance provides that an official named shall issue a building permit, when the applicant therefor shall have complied with all the requirements of the law and ordinances, the duty of the official is purely ministerial, and, if he refuses to issue the permit, mandamus is the proper remedy to compel him to issue it."

This rule appears to be generally enforced. In Ignaciunas v. Risley, 98 N. J. L. 712, 121 Atl. 783, the court discussed at length the weight to be given to respondent's allegations of increased noise, traffic congestion and dirt and accompanying danger to public safety, and in spite thereof awarded

mandamus. State ex rel. *v.* Mayor and Council, 94 W. Va. 189, 117 S. E. 888, accord. In People ex rel. *v.* Roberts, 153 N. Y. Supp. 143, the court, in awarding mandamus, said that if the business to be conducted should prove a nuisance, it could be abated and an injunction would lie to compel its discontinuance. Com. *v.* Heckert, 7 Dist. R. 186, accord.

In a series of cases, the New Jersey courts, first with regard to apartment houses and later with express reference to gasoline filling stations (see Ingersoll *v.* South Orange, 3 N. J. Misc. 335, 128 Atl. 393; Williams *v.* Gage, 3 N. J. Misc. 1095, 130 Atl. 721; Finkel *v.* Kaltenbach, 4 N. J. Misc. 135, 132 Atl. 197), held that where the plans violated no ordinance or regulation, the building inspector could not refuse a permit on the ground of increased fire hazard and peril to public, and in the case of Rudensey *v.* Board of Adjustment, 4 N. J. Misc. 103, 131 Atl. 906, they held that neither fire hazard nor alleged danger from increased traffic took the case out of the rule.

Counsel for the respondent urge, however, that in Coyne *v.* Prichard, *supra*, the ordinance expressly commanded the officer to issue the permit, and that the present ordinance, 'containing no positive mandate, imposed no duty. Wright *v.* France, *supra*, does not support respondent's contention, as it upheld a mandamus against the borough council itself. In Shisler *v.* Philadelphia, 239 Pa. 468, it is stated that mandamus shall not issue "to do any official act which the law does not expressly or by implication require such officer to perform." In Leader Printing and Publishing Co. *v.* Cauffiel, 23 Dist. R. 157, the same contention was raised, on the ground that the ordinance merely provided that "it shall be lawful for the mayor to issue . . . a permit." The court, in overruling it, said, at page 159: "Where a right has been established, and it is made lawful for a public officer to perfect that right by the performance of some duty, it follows as a legal conclusion that the refusal by the officer to perform that duty should not be permitted to nullify the vested right or privilege conferred." Finally, the Supreme Court, in the case of Herskovits *v.* Irwin, 299 Pa. 155, has ruled that the function is ministerial in a case wherein it does not appear that the ordinance either did or did not expressly command the issuance of the permit.

In the present case, the inspector's function was, under the above authorities, ministerial. Council doubtless might have adopted and promulgated rules and regulations such as would embrace the objections actually raised to the issuance of the permit, but had not done so, and the inspector, therefore, as in Harrison-Warren Realty Co. *v.* Spencer, 209 N. Y. Supp. 355 (1925), was "assuming to deny the application for the permit in the exercise of an uncontrolled discretion." We would not hesitate, therefore, to award the peremptory writ if it were not for the further defense raised in paragraphs five, six and seven of respondent's answer, to the effect that the council of the City of Reading, on August 16, 1930, nine days after the court, on plaintiff's petition, had awarded the alternative writ, passed an ordinance further regulating the matter.

Paragraph five of respondent's answer avers that the filling station and tank will be within 100 feet of a large and much-frequented playground, and paragraph six avers that the said ordinance of 1930 prohibits such installation within 300 feet of such playground. Plaintiff does not contend that his tanks and station will not violate the above provision, but objects, first, to the applicability of the ordinance to his case, and, secondly, to its constitutionality.

We are of opinion that the subsequent ordinance, if valid legislation, is effectual to prevent a peremptory mandamus in the present case. The present

case does not, like Herskovits *v.* Irwin, *supra,* show expenditures made and obligations incurred by the petitioner in reliance on a preliminary permit for foundations only. State ex rel. *v.* Kreuzweiser, 120 Ohio 352, 166 N. E. 228 (1929), accord. The question for us is simply, shall we compel a building inspector, who unlawfully refused to issue a building permit, to issue it now at the suit of one who is not alleged to have undergone any expenses and after an ordinance has been recently enacted making it now illegal to issue such a permit? In the cases of Rohrs *v.* Zabriskie, 102 N. J. L. 473, 133 Atl. 65, State ex rel. *v.* Houghton, 153 Minn. 518, 190 N. W. 979, In re Cherry, 201 App. Div. 856, 193 N. Y. Supp. 57, and Gulf Refining Co. *v.* McKernan, 179 N. C. 314, 102 S. E. 505, the courts answered this question in the negative. "Admitting that the ordinance does not have a retroactive effect, so far as buildings in the course of erection are concerned, it is clearly applicable where the process of construction has not yet been begun:" Rohrs *v.* Zabriskie, *supra.* "And such a defense is available though it may have arisen since the institution of the suit. The act having become unlawful, the position may be made effective at any time pending the proceedings when it is properly brought to the attention of the court:" Gulf Refining Co. *v.* McKernan, *supra,* p. 507. In Shisler *v.* Philadelphia, 239 Pa. 468, 469, the court said a writ of mandamus "does not lie to compel a public officer to do any official act which the law does not impose upon him; or to discharge the duties of his office in a manner not authorized by law, or to do any official act which the law does not expressly or by implication require such officer to perform. . . . Such writ has never been held to be a proper remedy, except where there is a clear legal right in the relator, and a corresponding duty on the defendant, and the want of any other adequate, appropriate and specific remedy." We do not think the further language of the court, at page 471, as to the effect of a subsequent ordinance, is to be applied to cases not involving equities of expenditures and obligations, such as existed in the Herskovits case and the Kreuzweiser case, *supra.* In Com. ex rel. *v.* Barker, 211 Pa. 610, 615, in mandamus against the city treasurer to pay over, he defended on the ground that after the writ issued city council repealed the appropriation ordinance. The court said: "But at the time judgment was asked against the respondent there was no such duty upon him . . . respondent cannot be commanded in this proceeding to perform a duty which no longer exists."

It has been suggested that though, upon principles and authorities just stated, the ordinance might be applicable, yet it is not so because by its own terms, as well as by the doctrine of prospective rather than retrospective interpretation (Merrick *v.* Du Pont, 285 Pa. 368), it applies only to applications made subsequent to its passage. We do not agree with this contention. From and after its passage, plaintiff's proposed construction could not lawfully be permitted or erected because less than 300 feet from a playground. The question is not simply whether we shall retrospectively apply an ordinance to the permit as of the day it was sought. It is that and more. It involves also the effect of the ordinance upon petitioner's presently existing right to obtain a permit by a peremptory command from this court to the present building inspector.

There remains the question of the validity of the ordinance. Gasoline is a highly inflammable substance, great quantities of which are employed in modern life. The City of Reading is vested, by the Act of April 7, 1925, P. L. 179, amending the Act of 1913, P. L. 568, article v, section 3, clause 46, with power "to make all such ordinances . . . as may be expedient or necessary for the proper management, care, and control of the city . . . and the main-

tenance of the . . . safety, and welfare of the city, and its trade, commerce, and manufactures." Furthermore, clause 39 of section 3 of article v of the Third Class City Act of 1913, as amended by the Act of May 27, 1919, P. L. 310, section 17, provides, *inter alia*, that third class cities shall have power "to regulate or prohibit the manufacture, sale, storage, or transportation of inflammable or explosive substances within the city, and to prescribe limits within which no dangerous, obnoxious, offensive business shall be carried on." The only limitation is that such ordinance be otherwise lawful and be reasonable. The ordinance in question provides, by section four, that: "No permit shall be granted for the construction, reconstruction or enlargement of any filling station or the installation of a gasoline tank or tanks, container or containers for the storage and sale of gasoline and other inflammable motor fuels, when said filling station or tanks, or any part thereof, are within fifty feet of any dwelling house or three hundred feet of any school, church, theatre, playground, park or other place of public assembly, or where, by reason of traffic conditions, fire or explosive hazard, said filling station or storage tanks or containers would imperil public safety." Counsel has not contended that the distances required are unreasonable; and distances similar thereto have been upheld in such decisions as Wittkop *v.* Garner, 4 N. J. Misc. 234, 132 Atl. 339, Johnston *v.* Hague, 2 N. J. Misc. 77, 136 Atl. 407, and Pierce Oil Corp. *v.* City of Hope, 248 U. S. 498, 500. It is, however, contended, first, that the ordinance is not within the powers granted by the above-mentioned statutes; second, that it is discriminatory, and, third, that it is an unwarranted delegation of legislative discretion to an administrative official, and is by reasons thereof indefinite and arbitrary. We shall take up these objections seriatim.

First, it is urged that the statutes authorize a regulation of the operation of the business and not of the kind of structures to be erected. This contention, if applicable to the Act of April 25, 1929, P. L. 778, certainly finds no support in the general language of the Act of 1925, *supra*. Moreover, the ordinance, both in its title and in its body, does expressly regulate the "storage and sale of gasoline and other inflammable motor fuels," and does not assume to prohibit or regulate installations for other purposes. Certainly, to regulate the site and plant of a business is a regulation of the business.

Secondly, it is urged that the ordinance is discriminatory because it does not purport to apply to gasoline filling stations already established. Counsel have cited no cases supporting their position. In the case of Iuszkewicz *v.* Luther, 30 R. I. 570, 76 Atl. 829, it was held that a municipal ordinance against the location of cemeteries within a city may except existing cemeteries without being discriminatory. A familiar instance of a regulation applying to future but not existing constructions is the prohibition occasionally contained in building codes against the erection of frame structures. We are not aware that such a rule has been held unconstitutional. "The state has given to the municipality power to prescribe the limits in which wooden buildings shall not be erected. This pertains to the future, and not to existing wooden buildings . . . or to those erected with the permission of the common council:" City of Buffalo *v.* Chadeayne, 134 N. Y. 163, 31 N. E. 443, 444. New York State Investing Co. *v.* Brady, 214 App. Div. 592, 212 N. Y. Supp. 604 (gas station); Wilson *v.* Edgar, 64 Cal. App. 654, 222 Pac. 623 (zoning ordinance), accord. In the case of State *v.* Taubert, 126 Minn. 371, 372, 148 N. W. 281, 282, the Supreme Court of Minnesota decided (syllabus by the court): "The ordinance of the city of Minneapolis permitting tanneries already in existence to continue in operation, but providing that no tannery

shall be established thereafter without first obtaining permission therefor from the city council, does not transgress the equality provisions of the Fourteenth amendment to the Federal Constitution." The case of Tugman *v.* Chicago, 78 Ill. 405, appears contrary to Wilson *v.* Edgar, *supra,* but not, we think, to the other decisions cited. In Tugman *v.* Chicago, *supra,* the councils prohibited the erection or operation of any slaughter house within a bounded section of the city except in buildings "now used for such purpose." In the present case, the ordinance permits gas stations in any part of the City of Reading, subject to reasonable requirements, when application shall hereafter be made. The exception of existing stations appears not so much a discrimination as a respect for permits already issued and structures erected in compliance therewith. See New York State Investing Co. *v.* Brady, 214 App. Div. 592, 212 N. Y. Supp. 604, *supra.* In short, the exception of existing constructions in the present case appears not to be arbitrarily made nor with an intent or effect to create a monopoly, as in Tugman *v.* Chicago, *supra,* but appears rather to have grown naturally out of the circumstance that there is some difference between the situation of one who now for the first time seeks a permit under legislation otherwise valid and one who prior to its enactment obtained a permit in compliance with existing laws and in reliance thereon expended large sums of money in the erection of structures. Just what are the rights of a person so placed and circumstanced is not an issue, and is not here decided. It is sufficient to say that the recognition of differences and of an exception reasonably growing from such differences does not constitute discrimination.

Plaintiff's final objection to the ordinance is that it is unreasonable, uncertain and indefinite because it reposes the issuance of permits in the discretion of the building inspector and, on appeal, of council, without stating definitely the regulation which should entitle or disentitle an applicant to a permit. Section two provides that the building inspector shall "at his discretion grant or refuse the said application in accordance with the provisions of this ordinance." Section three provides for an appeal to council. Section four prohibits the issuance of permits, first, within certain distances, and, secondly, "where, by reason of traffic conditions, fire or explosive hazard, said filling station or storage tanks or containers would imperil public safety."

On familiar principles (see 19 R. C. L. 814, § 118), the individual's right to conduct a lawful business on his own property should not depend on the discretion of the governing authorities. If certain conditions produce a traffic peril, fire or explosive hazard, it would seem that they should be adequately described and set forth in the regulations, so that all may learn and obey and equality among applicants for permits thereby be subserved, unless such conditions are shown not to be susceptible of being foreseen and made the subject of uniform and common prescription or are shown to be so multitudinous that an attempt to embody them in rules and regulations would seriously tax legislative ingenuity:" 43 C. J. 243; Yee Bow *v.* Cleveland, 99 Ohio 269, 124 N. E. 132, 12 A. L. R. 1424. However, it is not now necessary to determine the validity of all clauses of the ordinance, because, by paragraph eight of the ordinance, their constitutionality is expressly declared to be immaterial to its passage. Since plaintiff's proposed filling station will admittedly violate the distance clause, which we have hereinabove declared to be valid legislation, plaintiff is not entitled to a mandamus.

In order properly to impose the costs, we have found it necessary at some length to consider the rights of the parties at the time the alternative writ was obtained. Since at that time plaintiff had a good right to his writ, which

was only defeated by a subsequent municipal enactment, it is right that he should have his costs.

And now, to wit, December 5, 1930, plaintiff's demurrer to respondent's answer is overruled, and the peremptory writ of mandamus is refused, at the costs of defendant.