WALTON SUDDUTH *v.* W. C. SNYDER, *Mayor, et al.*

(No. 8861)

Submitted November 15, 1938. Decided December 6, 1938.

*J. S. Kahle* and *A. J. Lubliner,* for petitioner.
*Luther G. Scott,* for respondents.

FOX, JUDGE:

This is a case of original jurisdiction in which the plaintiff files his petition in mandamus, praying that the proper public authorities of the City of Bluefield be required to issue to him a permit to construct a filling station, and approaches thereto, on property owned by him on Bland Street in said city. It is not denied that the building and the approaches thereto come within the building regulations of the city as to plans and materials entering into their construction, and the only issue presented is whether or not, under existing laws and ordinances, the Board of Directors of said city was justified in refusing the permit on other grounds.

The case is submitted to us upon the petition of the property owner, the joint answer of the defendants named therein, representing the city, and demurrers to each of said pleadings; and also exhibits filed with said petition and answer.

The petition, which is undenied in this respect, sets up the ownership of the petitioner of a lot of land fronting some two hundred feet on Bland Street, opposite the point where College Avenue intersects with said street; and that the north line of College Avenue extended through the property of the petitioner shows that approximately seventy feet of the property owned by the petitioner fronting on Bland Street lies north of said line so extended. It is averred that the petitioner proposes to erect a filling station on that part of his lot lying north of said extended line, but the approaches to said station are laid over that portion of petitioner's property lying south of said line. This fact becomes important, because

the erection of filling stations in said city is controlled by section 29 of chapter 4 of "Miscellaneous Laws and Ordinances", which prohibits the construction or operation of any public gasoline station within one hundred and fifty feet of any dwelling house, public school or church, but provides that this inhibition shall not apply to "filling stations on lots fronting on Princeton Avenue from the eastern corporate limits of the City to Mercer Street, and Bluefield Avenue from Mercer Street to the Virginia state line, and Federal Street from Princeton Avenue to its intersection with Bland Street, and Bland Street from said intersection to its intersection with the north line of College Avenue extended." Under this ordinance the filling station proper, proposed to be constructed, is within the zone exempted therefrom, although within one hundred and fifty feet of a dwelling, but the approaches thereto from the south lie without that zone. The position of the city is that the filling station proper, and the approaches thereto, must be considered as one project, and that the admitted fact that the approaches lie without the zone in which a filling station may be erected and operated, justified their refusal to grant the permit. There are other objections based upon the congested condition of Bland Street at that point; the fact that a large number of the owners of residential properties objected to the location of the station; and that a kindergarten school is conducted within four hundred feet of the proposed station. On the other hand, it appears that immediately across the street from the proposed location, and at the corner of Bland Street and College Avenue, is a filling station of the Standard Oil Company of New Jersey, and adjoining this station on the north is a garage, and adjoining the garage, another filling station operated by the Pure Oil Company. Our attention is called to the fact that the ordinance prohibiting the erection of filling stations within certain zones is based upon the supposed fire hazards connected with such stations, and from this petitioner argues that it is the station itself, and not the approaches thereto, which

must determine his rights. He also asserts that having the right under said ordinance to erect said station, the right of reasonable approach thereto follows as a matter of course. The city contends that the granting of this permit is a matter of discretion which cannot be controlled by mandamus, whereas the position of the petitioner is that under the ordinance of the city, he has a clear legal right to erect the said station, and such a right as may be enforced by mandamus.

We are of the opinion that the petitioner is entitled to the writ prayed for. Compliance with the ordinances of the city in regard to the plans and materials entering into the construction of the proposed station is not questioned. Therefore, under the ordinance quoted, which we think must determine this controversy, there was vested in him a clear legal right to locate the station on that part of his lot lying north of the north line of College Avenue extended. The fact that he proposes to locate the station up to said line is not important. So far as the record discloses, there is nothing in the ordinances of the city which prohibits the use of all the property situated north of said line for the purposes proposed, and having that right, we are of the opinion that the ordinance controlling the location of filling stations, being one based on the theory of protection against fire, was intended to apply to the filling station proper, as distinguished from the approaches thereto, and that the right to construct the station carries with it the right to such approaches as are reasonably necessary to its use; such approaches being essential to that use, and not being in conflict with the purposes of the ordinance respecting fire protection, the construction and use thereof cannot be prohibited. The rights of the petitioner, as outlined above, with respect to said approaches, are not subject to the discretion of the Board of Directors of the city, so long as they do not interfere with the grade of the street or sidewalks as established, and no such interference is alleged or proven.

In *State ex rel. Nunley* v. *City of Montgomery,* 94 W. Va. 189, 117 S. E. 888, it was held that:

> "A city council has no authority to regulate the building of garages and restrict the locality in which they are permitted to be built, otherwise than by an ordinance of said city fully prescribing regulations of the same, and definitely setting forth the restricted area."

And that:

> "The common council of a city has no inherent power to regulate or restrict the erection of buildings within the corporate limits of such city, nor can such common council adopt a policy regulating and restricting the same otherwise than by an ordinance."

The only ordinance attempting to deal with the subject specifically excepts the ground on which the petitioner proposes to erect his station and there is, therefore, no ordinance of the city interfering with his right to do so. The same case holds that:

> "A limitation upon an owner's use of his property cannot be imposed by law for the benefit of other property owners."

The several petitions filed by owners of property located nearby, objecting to the location of the station on petitioner's land, do not in this instance afford a legal basis for the denial of the building permit, because such denial would result in the sacrifice of the property of the petitioner to the supposed convenience of other property owners. Only a general public interest may be made the basis of any restriction on the use of private property for a lawful purpose. A filling station is not a nuisance *per se. Bank* v. *City of Buckhannon,* 118 W. Va. 26, 188 S. E. 661. And if it should be sought to prevent the construction of such a station on petitioner's property on the basis of its being a nuisance, such a contention would

seem to apply with equal force to the other stations in that immediate vicinity. There cannot properly be any discrimination in the rights of property owners.

*Writ awarded.*