STATE *ex rel.* CHARLES E. AMMERMAN

*v.*

CITY OF PHILIPPI, *et al.*

(No. 10394)

Submitted June 5, 1951. Decided June 19, 1951.

*George M. Kittle, Dayton R. Stemple,* for relator.

*Paul B. Ware, William T. George, Jr.,* for respondents.

GIVEN, JUDGE:

In this original proceeding in mandamus, praying for a peremptory writ requiring the proper officials of the City of Philippi, a municipal corporation, to issue a permit authorizing him to erect a one story building "to be used for the purpose of automobile tire recapping shop", the petitioner alleges that an application for the permit was duly filed with the city council; that the application conformed with all requirements of the ordinance of the city as to form and content; and that the permit was refused without any valid reason therefor. The respondents filed a demurrer to the petition and jointly and severally answered the same. A general replication to the answer was filed and depositions taken by the parties are now before the Court.

Prior to the filing of the application for the permit petitioner was engaged in the business of repairing or "recapping" automobile tires at a location near the B. & O. Railroad passenger station in Philippi, the same type of business intended to be conducted in the proposed building. The lot upon which the proposed building is sought to be erected is situated about sixty-four feet from the old location, directly across what is known as B. & O. Street. In the immediate vicinity of the two locations there are a number of business buildings, and probably an equal number of dwellings. Some of the residents of that vicinity filed with the city council a petition objecting to the issuance of the permit, contending that the noise from such a business would prevent "persons living

nearby from getting a proper amount of sleep"; that "The obnoxious odors arising from said tire recapping station are extremely bad for those living in the vicinity of the plant"; and that the fire hazard in the vicinity would be greatly increased "because of the number of trucks and vehicles parked about such a place of business." In a letter addressed to petitioner it was stated that the issuance of the permit had been denied by the city council for the reasons so assigned.

Chapter 71 of the 1923 Acts of the Legislature gives the city its present charter. Section 16 of that chapter enumerates the "general powers" granted to the council. Subdivision (26) of that section reads: "To regulate or prohibit the erection or operation, or maintenance in what the council deems an improper locality within said city, any blacksmith shop, livery stable, barn, stable, cattle pen, poultry house, pig pen, privy, bill board, sign board, gas or other engine, coal mine, coal plant, or coal bin, or any other thing that may in the opinion of the council be a menace to persons or property or public safety, or that would injure private property or annoy citizens of said city." Subdivision (57) reads: "To regulate the erection, construction, alteration and repair of dwelling houses, buildings and other structures, within the municipality, to issue permits therefor, and to compel the numbering of such houses and buildings by the owners and occupiers thereof; and to prescribe by ordinance the distance which dwelling houses, and other structures in resident districts shall be set back from the sidewalk." No contention is made that any other provision of the charter has any application to the subject matter of the instant action.

Acting under the authority so granted, the city council enacted an ordinance known as "Chapter IX, Building Ordinances". Section 1 of that ordinance prohibited any person from erecting any building of any kind, without first obtaining a permit from the city council. The applicable provisions of Section 2 of the ordinance are: "Any person desiring to erect a new building of any kind,

\* \* \* shall submit to the city council the general plan of such new building, and the purpose for which it is proposed to use the same, \* \* \* and shall designate the street, alley, road, lot or land on which it is proposed to erect such new building, \* \* \* and shall do no work whatever upon such building, until a permit has been obtained from the city council. \* \* \*." A penalty is provided for any violation of the section. Section 3 of the ordinance requires the city clerk to issue any permit authorized by the council upon the payment of a nominal fee. Section 4 of the ordinance reads:

"4. To the end that the citizens of this city may be protected from noxious smells, disturbing noises and secured in the enjoyment of their own property in peace and quietude, it is hereby declared unlawful for any person to erect or operate any stable, livery barn, tannery, tan house, soap factory, planing mill, flouring mill, blacksmith shop, carpenter shop, foundry, machine shop or other factory, or shop of a like kind, without first obtaining the consent of the city council, and the application to erect or operate any such industry, shall specifically designate the place where the same is to be located, the amount of land which is to be used in connection therewith, what disposition is proposed to be made of the refuse and waste therefrom, and a fair description of the building or buildings proposed to be erected and used, of what material the same is to be built of, what provision is proposed to be made against the danger of fire, and all such other information as will enable the council to determine and pass upon the application intelligently. Any violation of this section shall be punished by a fine not to exceed one hundred dollars, and imprisonment of not more than six months in the discretion of the mayor."

Section 5 of the ordinance defines a certain zone within the city as being "within the fire limits", but the lot upon which the proposed building is to be erected does not lie within that zone.

It is the contention of petitioner that the ordinance, in

so far as it has any application to erection of the proposed building, is void, and that the business proposed to be conducted within the building not being a nuisance *per se*, the action of the city council in refusing the permit was arbitrary, capricious and void.

We are of the opinion that the first point is well taken. There is no doubt that the provisions of the charter authorize the city to enact ordinances regulating construction of buildings within the city. The provisions of the charter, however, are not self executing. Enabling ordinances are necessary. An examination of Section 2 of the "building ordinance", the only provision applicable here, discloses no prescribed rules, standards or guides for the granting or withholding of such permits. Under the ordinance the council could grant the permit to one applicant and, in the same circumstances, withhold it from another. Sole discretion is attempted to be vested in the city council, which it may exercise in the interest of a favored applicant or against the interest of an unfavored one. The value of the property of one citizen could be diminished or destroyed to the advantage of another property owner. Power granted a municipality to regulate is not power to destroy. Such power does not accord with due process of law. A reviewing tribunal could not determine whether each citizen was treated equally and fairly. Such an ordinance is uniformly held void. The rule is well stated in *Casto v. Town of Ripley*, 95 W. Va. 521, 121 S. E. 725. Point 1 of the syllabus reads: "An ordinance of a town which fails to specify rules and regulations for the erection of buildings and their location, within the corporate limits of such town, and grants to the common council the right to grant or withhold its permission to erect buildings therein, is void." To the same effect are *Sudduth v. Snyder*, 120 W. Va. 746, 200 S. E. 55; *Austin v. Thomas*, 96 W. Va. 628, 123 S. E. 590, 38 A. L. R. 1490; *Nunley v. City of Montgomery*, 94 W. Va. 189, 117 S. E. 888; *Johnson v. City of Charleston*, 91 W. Va. 318, 112 S. E. 577; *Lynch v. Town of North View*, 73 W. Va. 609, 81 S. E. 833, 52 L. R. A. (N.S.) 1038.

Respondents contend that petitioner proposes to operate or conduct a business in the proposed building which, as operated by petitioner, would constitute a nuisance within the meaning of Section 4 of the "building ordinance", quoted above. Considerable evidence is produced by respondents tending to show that residents of the vicinity wherein petitioner has heretofore operated his business were greatly annoyed by noises and obnoxious odors arising therefrom. Petitioner controverts this and a number of witnesses support his contention. We think it clear, and do not understand respondents to contend otherwise, that the business conducted by petitioner is not a nuisance *per se.* No doubt some noises and some odors obnoxious to some individuals result therefrom. This is not sufficient, however, to constitute a business a nuisance *per se.* See *Powell* v. *Furniture Co.,* 34 W. Va. 804, 12 S. E. 1085, 12 L. R. A. 53; *McGregor* v. *Camden,* 47 W. Va. 193, 34 S. E. 936; *Chambers* v. *Cramer,* 49 W. Va. 395, 38 S. E. 691; *Town of Fulton* v. *Norteman,* 60 W. Va. 562, 55 S. E. 658, 11 L. R. A. (N.S.) 1196; *Parker* v. *City of Fairmont,* 72 W. Va. 688, 79 S. E. 660, 47 L. R. A. (N.S.) 1138; *Donohoe* v. *Fredlock,* 72 W. Va. 712, 79 S. E. 736; *State* v. *Clendenin,* 92 W. Va. 618, 115 S. E. 583. In Point 1, syllabus, *Donohoe* v. *Fredlock, supra,* the Court held: "Under the provisions of the charter of a city that the council thereof shall have the power 'to regulate the making of division fences and party walls by the owners of adjoining and adjacent premises and lots; to prevent injury or annoyance to the public or individuals from anything dangerous, offensive or unwholesome; and to abate by summary proceedings whatever in the opinion of the council is a nuisance', the council may abate only that as a nuisance which is recognized as such *per se* or branded as such by a lawful statute or ordinance." No statute or ordinance brands the business proposed to be operated by petitioner as a nuisance. The building itself can not constitute a nuisance in the circumstances. Should any business be operated therein so as to constitute a nuisance, and injury result to persons or property, courts would be open to those injured. The city would have an adequate remedy.

In *Casto* v. *Town of Ripley, supra,* Point 2, syllabus, this Court held: "Where there is no valid ordinance prohibiting anyone from erecting a building within the corporate limits of a town before obtaining permission therefor from the common council of said town, mandamus will not lie to compel said common council to grant a building permit for the erection of a building therein." In *Nunley* v. *City of Montgomery, supra,* the city council refused to issue a permit for the construction of a garage building where there existed no valid ordinance regulating the construction of garages, and this Court awarded a writ requiring the issuance of the permit. Apparently the writ was denied in the *Town of Ripley* case upon the theory that the building could have been erected without any permit. We are of the opinion, however, that the better view and practice is to award a writ in such cases. The city council, in the instant case, assumed to act under the ordinance and refused to authorize issuance of the permit. In doing so it acted without authority. "Where a public officer or board acts in excess of jurisdiction or without authority, mandamus is the proper remedy to review and correct such action." 55 C. J. S., Mandamus, Section 134. In *Carter* v. *City of Bluefield,* 132 W. Va. 881, 54 S. E. 2d 747, this Court quoted with approval from 58 Am. Jur., Zoning, Section 235, as follows: " 'In the case of a building or use permit refused or cancelled under a void zoning regulation, or contrary to the requirements of a valid zoning ordinance, mandamus to compel the issuance of the permit, or to cancel the revocation thereof, is an appropriate remedy.' " Numerous authorities are cited in the footnote in support of the statement made in American Jurisprudence. See *Mustard* v. *City of Bluefield,* 130 W. Va. 736, 45 S. E. 2d 326; *Sudduth* v. *Snyder, supra; Austin* v. *Thomas, supra; State* v. *City of Charleston,* 91 W. Va. 318, 112 S. E. 577; *State* v. *Stahlman,* 81 W. Va. 335, 94 S. E. 497, L. R. A. 1918C, 77; *Welch* v. *Swasey,* 193 Mass. 364, 79 N. E. 745, 23 L. R. A. (N.S.) 1160, 118 Am. St. Rep. 523; *Henderson* v. *Greenwood,* 172 S. C. 16, 172 S. E. 689.

In reaching this conclusion we necessarily overrule the

holding announced in Point 2 of the syllabus in *Casto* v. *Town of Ripley, supra.* Accordingly, a peremptory writ will be awarded petitioner as prayed for in his petition.

*Writ awarded.*