B. W. JONES v. R. E. PARKER and BENJ. SAUNDERS.

*Deed—Easement—Boundary—Variance.*

A deed conveying "a certain tract of land, including the mill seat and mill, known as the Jethro R. Franklin mill, *embracing as far as high water mark*, and bounded as follows," &c., is a conveyance of the *land* covered by the waters of the mill pond as far as the high water mark, notwithstanding this construction should produce a wide variance between the amount of land embraced in this boundary and that mentioned in the deed.

This is a CIVIL ACTION, which was tried before *Avery, J.,* at Spring Term, 1887, of GATES Superior Court.

· This action is prosecuted to recover damages for trespasses alleged to have been committed on the plaintiff's land, the title to which is derived under a deed made on January 2, 1869, by the defendant Richard E. Parker to Joseph J. Jones and William T. Jones, and subsequent conveyances from them to the plaintiff. In each of these deeds the land is described in similar terms, and as follows: " A certain tract or parcel of land, including the mill seat and mill known as the Jethro R. Franklin mill, the said tract of land situated in the County of Gates, *embracing as far as high water mark,* and bounded as follows: ' On the north by the lands of Richard E. Parker, Reddick Brinkley and others; on the east by the lands of Harrison Brinkley and others; south by the desert road; west by the lands of Josiah H. Reddick and others, including two acres of land on the west side of said mill, containing ten acres, more or less.' "

The title of the defendant R. E. Parker is deduced from a deed of John J. Gatling, administrator of Jason Franklin, made by virtue of a judgment of the Court in proceedings instituted to convert the intestate's real estate into assets for the payment of debts, wherein the land is thus described: " On the north by James W. Brinkley's line; on the east by Parker's mill pond; on the west by B. W. Jones' (the plaintiff) line; on the south by the Edenton road, the line of Peter Franklin and others, containing one hundred acres, more or less."

The intestate claimed under a deed to him executed in 1821 by Josiah Reddick, conveying the land afterwards disposed of by the administrator in the year 1872.

The trespasses for which compensation was demanded were committed upon land within the high water boundary of the pond, and when full covered by its waters, in cutting down and carrying away timber trees standing thereon, and the result of the action depends upon the construction and effect of the deeds which constitute the plaintiff's chain of title. If

the land under water up to the highest usual margin passes to the plaintiff, he is entitled to recover damages under the admissions of the parties; if not, he fails in the action, and this is the question before us for solution.

The Court charged the jury that it being admitted that the plaintiff was in the actual possession of the mill under the deed offered in evidence when the trees were cut, the plaintiff was the owner and in the constructive possession of the mill pond to high water mark, and was entitled to recover the reasonable market value of all timber cut by the defendants from the mill pond below the high water mark. The jury having found the issues in favor of the plaintiff and assessed his damages at $65.50, and judgment rendered thereon, the defendants appealed.

*Mr. John Gatling* and *Leroy Smith,* for the plaintiff.

*Messrs. Pruden & Van* and *T. J. Skinner,* by brief, for the defendants.

SMITH, C. J., (after stating the case). The charge of the Court, it will thus be seen, puts an interpretation upon the descriptive words of the plaintiff's deed, " embracing as far as high water mark," which covers all the overflowed land up to its high water boundaries, and vests the estate therein in him.

The use of the water of the pond is necessary to the running of the mill, and it would be valueless without the ownership of the submerged land or of the easement in the covering waters. The principal and primary intent in the conveyance is to secure all the privileges incident to the working of the mill, and to enable the bargainee to enjoy the advantages of operating afterwards as before, and even to convey the land itself or an easement as essential to its enjoyment. The language used in describing the subject matter upon which the deed was to operate clearly points to the

land, and not to an encumbering easement. It is a " tract of land," and embraces the land " as far as high water mark," which the deed purports to convey, and thus within the marginal boundaries of the pond.

The references in the brief of appellants' counsel to which our attention is called, that construe the terminus of a line at a pond created by artificial obstructions or dams upon a running stream to obtain a water power as extending into the water as far as the channel, have no application to the present case, since reversing the running of the line the water covered land, that is, a parcel of land defined by the margin of the pond is described and the estate therein conveyed. *Lee* v. *Woodard*, N. C. Term R., 100 (537).

We concur in the construction put upon the deed by the Court, that its operative words are not restricted by the fact that there is a variance in the area of the tract, it being from 40 to 60 acres, from that mentioned in the deed, which may be explained by supposing the bargainor intended only to apply the words to the upland end, not to the pond.

There is no error.