THOMAS M. KING *v.* GUY L. MEABON

(No. 9704)

Submitted September 11, 1945.   Decided November 27, 1945.

H. W. *Bowers* and P. G. *Meador*, for appellant.
W. H. *Daniel*, for appellee.

RILEY, JUDGE:

Guy L. Meabon prosecutes this appeal from a decretal judgment pronounced against him by the Circuit Court of Cabell County in a suit in equity in which Thomas M. King was plaintiff and petitioner was defendant.

The suit is based upon an agreement of assignment, dated May 27, 1940, between King and Meabon, in which the latter assigned to the former a three sixty-fourths

interest in the seven-eighths working interest in and to all of the wells to be drilled by Meabon under a contract dated May 22, 1940, between Meabon and H. W. Bowers, Trustee. The Meabon-Bowers contract contains recitals that Bowers, Trustee, was under contract to furnish gas to Barboursville Clay Manufacturing Company, hereafter to be referred to as the "Clay Company", that he contemplated building a four-mile gas line into the area to the south of the Clay Company's plant at Barboursville, and that he had obtained certain oil and gas leases in Barboursville District, Cabell County, covering a tract of about twenty-five hundred acres of land and is attempting to obtain two other tracts known as the Ayers lease of seventy-three acres and the State Farm containing approximately five hundred acres. Bowers, Trustee, agreed therein to assign leases, to be selected by Meabon, in the district aforesaid, covering approximately fifteen hundred acres; and Meabon, the owner of two strings of tools, to proceed with the drilling on the leases so assigned to him. The production to be attained and maintained was placed at fifteen million cubic feet per month. Bowers, Trustee, was to pay for the gas at the rate of twelve cents per thousand. In no event, the agreement provides, would Bowers, Trustee, be required to take more than fifteen million cubic feet of gas a month. It was further provided that should the production not reach the required volume before January 1, 1941, Bowers, Trustee, might make up the deficiency elsewhere. This contract was to remain in force for a period of ten years from the date thereof and so long thereafter as gas should be found in paying quantities. The foregoing contract was replaced by another, bearing date November 27, 1940, in which Industrial Fuel Company, hereafter referred to as "Fuel Company", was substituted as party of the second part, and the time for reaching the maximum output was extended from January to April 1, 1941. This contract recited, among other things, that the party of the first part "has drilled certain oil and gas wells in Barboursville District * * * on the waters of Guyan River, and has drilled a well on the

L. E. Browning farm and on the Hatfield farm, and is now drilling a well on the Alberts farm, and contemplates drilling other gas wells near and along the gas line now being constructed by the party of the second part" and provides that Meabon "will continue drilling upon leases now held by him or which may hereafter be obtained by him or which have been assigned or which may hereafter be assigned to him by H. W. Bowers, Trustee, along or near the gas line now being constructed or which may hereafter be constructed by the" Fuel Company.

A contract of like import to that of May 22, 1940, was entered into between Meabon and the Fuel Company, under date of November 1, 1940, for the purchase of six million cubic feet of gas a month. There is a recital in this contract that the second party, the Fuel Company, owns certain leases in the Barboursville District "about one mile east of the L. E. Browning property, or about one mile southeast of the town of Martha in said district."

The bill of complaint alleges, in substance, that on or about May ——, 1940, plaintiff entered into contract with Homer Wiseman, who was then and is now president of the Clay Company, and who was acting for and on behalf of himself and his associates, Harry W. Kelly and H. W. Bowers, in securing a supply of natural gas for resale to said Clay Company, for the production and sale of a maximum of fifteen million cubic feet of gas a month for ten years at the price of twelve cents a thousand cubic feet; that before the agreement was reduced to writing, plaintiff agreed to assign the contract when reduced to writing, to defendant, but before its execution, at defendant's suggestion, a contract, bearing date May 22, 1940, was entered into between Meabon and Bowers, Trustee, the latter acting on behalf of himself, Kelly and Wiseman; that defendant entered into an assignment on May 27, 1940, with King and two contracts with the Fuel Company, dated November 1 and November 27, 1940, respectively, (the substance of the

aforesaid four instruments appears in the preceding paragraphs of this opinion). The bill of complaint further charges that all of the capital stock of the Fuel Company is owned by Wiseman, Kelly and Bowers; that the defendant proceeded to drill in four wells and did pay plaintiff in accordance with the assignment; that defendant has not accounted to plaintiff for any part of the proceeds from sales of gas produced and sold under contract of November 1, 1940; that after drilling the four wells under the contract of May 22, 1940, and one well under the contract of November 1, 1940, he removed his drilling tools from the territory covered by the contracts, ostensibly forfeiting his rights under the contract of May 22, 1940; that in May or June, 1942, he returned to the territory covered by contract of May 22, and commenced drilling wells, the number being unknown to plaintiff, and selling products therefrom in his or in the name of another to the Fuel Company for resale to the Clay Company; that Wiseman is president, Kelly, secretary, and Bowers, attorney, for the Clay Company, and the three are owners of the capital stock of the Fuel Company; that the latter sells gas to the Clay Company at eighteen cents a thousand cubic feet; that defendant's removal of tools and his contractual relations with others in the production was an attempt to fraudulently avoid payment to plaintiff under his assignment and the contract of May 22, 1940; that plaintiff is entitled under the contracts to a three sixty-fourths share of the net proceeds received by the defendant and his assigns from sale of gas to Bowers, Trustee, and the Fuel Company, which has heretofore been or may hereafter be resold by them to the Clay Company, produced from the territory under contract of May 22, 1940; that by reason of defendant's failure to comply promptly with the contract of May 22, 1940, and assignment of May 27, 1940, plaintiff is entitled to an accounting; and that plaintiff has sustained substantial damages, to-wit, in the amount of fifteen thousand dollars.

The bill prays that defendant answer under oath the allegations of the bill of complaint; that he be required to render a true and accurate account of all monies received from Bowers, Trustee, the Fuel Company and the Clay Company from May 22, 1940, to April 1, 1943, whether directly or indirectly; that he be required to disclose any agreements he now has with them for the supplying of gas from the territory covered by contract of May 22, 1940; that proper accounts be taken and had; that the amount due from defendant to plaintiff be ascertained and determined, and that plaintiff have a decretal judgment therefor; and for general relief.

In his answer defendant admits entering into the contracts of May 22, November 1 and November 27, 1940, as well as the assignment of May 27, 1940. However, he denies that the contract of May 22 was negotiated by plaintiff but avers that the contract of November 27 was executed, with knowledge and consent of the plaintiff, for the purpose of taking the place of and modifying the contract of May 22. He avers that four wells were drilled under the contract of May 22, and that he did not drill any wells or produce any gas under the contract of November 1. He admits he removed his tools to Kentucky, and denies that he returned in May or June, 1942, to the territory involved in the contract of May 22, and drilled and sold gas therefrom; he avers that he assisted one Jesse H. Chaffin and others in the drilling of one well on a lease belonging to Chaffin; that he furnished the tools, and further that said well was not drilled by defendant, nor was it drilled under contract of May 22. He admits Wiseman, Kelly and Bowers' connection with the Clay Company and that they are owners of the capital stock of the Fuel Company. Defendant avers he is not advised as to the price the Fuel Company gets for its gas and denies that the movement of the tools was for the purpose of defrauding, or avoiding payment to plaintiff. He avers that plaintiff has received and is now receiving three sixty-fourths of the net proceeds of sale of natural gas produced by defendant or his succes-

sors and assigns, and denies that by his failure to comply promptly with the terms of the contract plaintiff has sustained damages of fifteen thousand dollars. He avers that plaintiff approached him and advised he could obtain for him a "very favorable contract" in a very productive territory; that the parties to whom gas was to be sold were prepared to construct a pipeline through such territory; that upon such representations he entered into the contract of May 22 and the assignment of May 27, and began drilling; that because the wells were small he could not finance them further. The answer further alleges that plaintiff had promised to assist in securing capital, but had not carried out his part; that said contract between plaintiff and defendant, constitutes a joint enterprise or promotion in which the profit therefrom depended upon the success of the enterprise, and that plaintiff has received in full all profits due him from said joint enterprise.

The accounting was waived in open court and the court proceeded to hear testimony. At the conclusion of the evidence the court entered a decretal judgment in favor of the plaintiff in the amount of twenty-one hundred dollars.

It is definitely established from the evidence that four wells were drilled by defendant either under the contract of May 22 or the substitute of November 27, 1940, and that the defendant has accounted to plaintiff for his share of all profits derived from the sale of gas from said wells; that the fifth, the Meyers well, was not drilled under the six million feet contract of November 1, 1940, as charged in plaintiff's bill of complaint, nor under the contracts of May 22 or November 27, 1940, but under a contract for two hundred thousand cubic feet a month between one Carl Smith and the Fuel Company, which had been turned over to Meabon, the well having been drilled for the latter by one Dr. Jones and Leslie Franklin; and that another, the Hinchman well, was drilled by Chaffin, under a lease held by him, and not by defendant under the contract of November 27, on his return from Kentucky,

as charged. It also appears that a number of others were drilling in the same general vicinity and under contracts with the Fuel Company for the sale of the gas found.

Meabon testified that due to the meager production of the four wells drilled under the leases assigned to him, it became impossible to further interest the public in putting more money into future wells; also, that the contracts of May 22 and November 27, 1940, automatically released themselves to the extent of any deficiency existing after April 1, 1941, and that they were not exclusive; and that others could, and did, participate in marketing gas to the Fuel Company. It appears that defendant's maximum production under his contracts did not exceed five million cubic feet a month—being just one-third of the production originally contemplated.

After the completion of the Hinchman well, and some time prior to the bringing of this suit, plaintiff disposed of the three sixty-fourths interest in the four wells assigned to him, together with a like interest which he claimed in the Meyers well, for which he had no assignment. Two-thirds of plaintiff's interest in the first three wells, and the whole of his interest in the fourth, together with the claimed interest in the Meyers well, was sold to Jesse Chaffin for a consideration of seven hundred dollars, the remaining interest in the first three wells having been previously sold to Thomas West.

Plaintiff sought damages in an amount equal to three sixty-fourths of the net receipts based on a maximum production of fifteen million cubic feet a month through the ten-year period, less payments already received. The trial court, after indicating that plaintiff's position was not fair, took into account the production of the four wells and the value which plaintiff, by his sale to Chaffin, had voluntarily placed on a two-thirds interest therein. By such sale the court found that plaintiff's whole interest in the wells was worth one thousand and fifty dollars. Full production under the contracts would

be worth three thousand one hundred fifty dollars. So, after deducting the value of the wells sold, the court found that twenty-one hundred dollars was due to plaintiff.

By its finding the circuit court arrived at the conclusion that the Meyers and Hinchman wells, and the other wells drilled by third persons did not come within the terms of defendant's contracts, and that the proceeds therefrom had no place in this cause. Its finding in this respect not being clearly wrong or against the clear preponderance of the evidence will not be disturbed on this appeal. *Atwater & Co.* v. *Fall River Pocahontas Collieries Co.*, 119 W. Va. 549, 195 S.E. 99; *Highland* v. *Davis*, 119 W. Va. 501, 195 S. E. 604.

The sole issue presented on this appeal, in our opinion, is whether a court of equity had jurisdiction to entertain the matters involved in this suit. It is to be noted that when the final decree was entered the issue before the circuit court was whether a decretal judgment should be entered in favor of the plaintiff against defendant for damages based upon a breach of contract. It follows that the circuit court was without jurisdiction unless the record contains substantial matter for equity jurisdiction. In the absence of both the averment and proof of an equitable right, a court of equity will not adjudicate a purely legal right. *Wyoming Coal Sales Co.* v. *Smith-Pocahontas Coal Company et al.*, 105 W. Va. 610, 144 S.E. 410, 62 A.L.R. 740.

While the agreement of assignment of May 27, 1940, gave King a three sixty-fourths interest in the net proceeds derived under the contracts of May 22 and November 27, 1940, plaintiff was not a party signatory to either of them. The interest in the earnings to be derived thereunder did not, in our opinion, create a partnership. Therefore, such relationship could not be relied upon to support a suit in equity.

Whether plaintiff and defendant were engaged in a joint adventure as alleged in defendant's answer, we

need not decide. Even as between joint adventurers a court of equity will not entertain the suit of one joint adventurer against another to enforce a purely legal demand. Thus in *Annon* v. *Brown,* 65 W. Va. 34, 63 S.E. 691, this Court held that a court of equity had no jurisdiction to enforce recovery of an aliquot part of a specific sum of money, realized from a joint transaction or adventure as net profit, and set aside in the hands of one of the parties as the sum to which he and another are entitled, and which they are to share equally. The record here contains no substantial evidence of fraud and no grounds for accounting or discovery or other grounds upon which equity jurisdiction could have been based. The instant case differs from the *Annon* case only in that the plaintiff sought to recover in the latter case a specific sum of money, while in the instant suit plaintiff seeks recovery of unliquidated damages for a breach of a contract which defendant alleges is one of joint adventure. The demands in both cases are legal and have appropriate and adequate remedies in a court of law. We therefore are of opinion that the defendant's motion to dismiss plaintiff's bill of complaint, made after the evidence was in, should have been sustained.

The decree of the circuit court is reversed and the plaintiff's bill dismissed.

*Reversed; bill of complaint dismissed.*