H. A. Carpenter

*v.*

Ohio River Sand and Gravel Corporation

(No. 10210)

Submitted April 25, 1950.   Decided June 20, 1950.

*Ambler, McCluer & Davis, Frank J. Barron,* for appellant.

*Robert B. McDougle, Walter F. Ball,* for appellee.

LOVINS, PRESIDENT:

This suit was instituted in the Circuit Court of Wood County by H. A. Carpenter, hereinafter referred to as "plaintiff", against the Ohio River Sand & Gravel Corporation, a corporation, hereinafter designated as "defendant". The bill prays for a mandatory injunction, requiring defendant to remove its dredges, barges and all other equipment used by it in the dredging of sand and gravel from the land of plaintiff, and an inhibitory injunction restraining and inhibiting the defendant from entering upon the land of the plaintiff for any purpose other than navigation and from dredging or removing sand or gravel, or any other material, from the bed of the Ohio River within the low water mark around Williamson Island.

The bill also prays that the amount of sand and gravel removed from the property of plaintiff by defendant be ascertained, and that plaintiff be awarded a decretal judgment for the value thereof.

A temporary injunction was granted. On motion of defendant the injunction bond was increased from one thousand to five thousand dollars. Thereafter, an answer was filed by defendant, and depositions were taken by plaintiff and defendant in support of their respective contentions.

The trial chancellor entered a final decree, making various findings of fact, hereinafter discussed, dissolved the injunction theretofore awarded, denied the relief prayed for and dismissed the bill of complaint. From that decree plaintiff prosecutes this appeal.

By three several deeds, dated, respectively, August 15, 1928, February 1, 1930, and March 18, 1931, plaintiff acquired Williamson Island and "Witten Towhead", hereinafter referred to as "islands", situate in the Ohio River a

short distance west of the Town of Sistersville. According to a survey made at the instance of plaintiff, the islands contained approximately 79.38 acres farm land, 33.77 acres waste land, 125.46 acres riparian sand and gravel, and 1.6 acres unclassified.

On one occasion prior to the institution of this suit, defendant began dredging operations at a point adjacent to the islands, and, according to the proof of plaintiff, upon his demand defendant removed its equipment from the land and paid plaintiff the sum of fifteen hundred dollars. In September, 1944, defendant again commenced dredging operations adjacent to the islands, but upon the demand of the plaintiff ceased its operations for a period of two weeks and then resumed dredging sand and gravel near the islands. Thereafter defendant has refused to comply with the demand of the plaintiff that it desist from further dredging operations.

The evidence on behalf of plaintiff consists of numerous depositions by persons, who have been acquainted with the terrain and low water mark of the Ohio River in the vicinity of the islands for many years, including the year 1908 and since that time. Based on such information and the data shown on Charts Nos. 37 and 38 made under the supervision of the Ohio River Board of Engineers of Locks and Dams by the District Engineer Office of the United States of America at Louisville in the spring of 1945, an engineer employed by plaintiff fixed the low water mark around said islands at the lowest point to which the waters of the Ohio River receded in the year 1908, delineating the same upon a map filed with plaintiff's bill of complaint.

The defendant caused a survey of said sand and gravel bars to be made by an engineer employed by it. The survey made by such engineer fixed the low water mark of the Ohio River nearer to the exposed shore of the islands, and at a different location from that established by plaintiff's engineer.

The defendant relies upon the data shown on United States Engineers' Charts Nos. 37 and 38, and opinion testi-

mony by experts to the effect that said charts furnish the best evidence of the location of said low water mark. Admittedly, a dredging operation for sand and gravel was carried on by defendant between the exposed shore of the islands and the low water mark, as testified to by plaintiff's witnesses and shown by the map made by plaintiff's engineer, but it is vigorously denied by defendant's witnesses that any dredging operations for sand and gravel were carried on between said low water mark as contended for by defendant and the exposed shore of the islands. Witnesses on behalf of plaintiff testified that dredging operations were carried on by defendant within the low water mark of the islands, as allegedly shown by said charts.

Considerable proof was taken to show the amount of sand and gravel taken by the defendant in its dredging operations, and also to prove that defendant had conducted its operations on the sand and gravel bars in such manner as to destroy their value by digging depressions into which deleterious and foreign matter, which is of no commercial value, had been deposited by the action of the river current.

The defendant's answer denies the material allegations of the bill of complaint, but admits that the plaintiff has title to all the sand and gravel within the low water mark of the Ohio River surrounding the islands, as fixed and determined by the Supreme Court of Appeals of West Virginia, the same being the point to which the water has receded at its lowest stage prior to the construction of dams. It is also admitted that plaintiff has the sole right to dredge for sand and gravel within said low water mark.

Dam No. 16 has been constructed below the islands, and, as a result, the water covers the sand and gravel bars claimed by plaintiff. Defendant conducts its dredging operations allegedly in the bed of the Ohio River under the authority granted it by the Secretary of War of the United States of America, dated December 29, 1941, which authority was extended to December, 1947.

Upon final submission the trial chancellor made six specific findings, which may be summarized as follows: (1) That Government Charts Nos. 37 and 38 of the Ohio river are the best evidence of the location of low water mark at the islands "within the intendment of our law"; (2) that defendant did not in May, 1945, (a) enter on said islands with its dredge boats, barges and diggers, nor (b) remove gravel, nor (c) excavate and dredge thereon holes or excavations, nor (d) express any intention to excavate and carry away gravel, as alleged in the bill; (3) that defendant did not take and carry away gravel belonging to the plaintiff; (4) that defendant did not between the month of May, 1945, and the filing of the bill take and carry away from said islands any sand or gravel belonging to the plaintiff; (5) that defendant had not between the month of May, 1945, and the filing of the bill of complaint herein caused plaintiff any damage; (6) that plaintiff is not entitled to relief; and (7) that defendant is entitled to the relief prayed for in its answer.

In considering this record we do not give Government Charts Nos. 37 and 38 the controlling effect accorded them by the trial chancellor. They are admissible as evidence, but they are not of such force as to warrant ignoring other competent evidence introduced by the plaintiff. Furthermore, no person who made the surveys and accumulated the data for the preparation of said charts testified. The evidence in relation thereto on behalf of plaintiff consisted of data shown on the charts, a survey by defendant's engineer, and the opinion of expert engineers that said charts were accurate and the best evidence of the location of the low water mark of the Ohio River at that point.

Evidence on behalf of plaintiff consisted of a survey and oral testimony. We have no reason to doubt the truth of the oral testimony, and, in the main, the accuracy of the survey made by plaintiff's engineer, although there is testimony to the effect that the engineer who made the survey and map for the plaintiff was in error as to the proper elevation shown on base mark No. 219.

This Court over a long period of years has accorded to

the findings of fact of a trial chancellor great weight. It has been expressed in various ways, but in effect there is no appreciable or substantial difference in principle. In *Bennett* v. *Neff*, 130 W. Va. 121, 12 S. E. 2d 793, the following language was used in the syllabus: "In equity the finding of fact by a trial chancellor, based on conflicting evidence, will not be disturbed on appeal unless it is clearly wrong or against a clear preponderance of the evidence." *Sutton* v. *Sutton,* 128 W. Va. 290, 36 S. E. 2d 608; *King* v. *Meabon,* 128 W. Va. 263, 270, 36 S. E. 2d 211; *Johnston* v. *Terry,* 128 W. Va. 94, 36 S. E. 2d 489; *Watkins* v. *Railway Co.,* 125 W. Va. 159, 23 S. E. 2d 621; *Board of Education* v. *Insurance Co.,* 124 W. Va. 163, 19 S. E. 2d 448; *Shipper* v. *Downey,* 119 W. Va. 591, 197 S. E. 355; *Spradling* v. *Spradling,* 118 W. Va. 308, 190 S. E. 537; and *Kincaid* v. *Evans,* 106 W. Va. 605, 146 S. E. 621, are to the same effect. We reiterate our adherence to the principle enunciated in those cases. But we think that the evidence in this case preponderates in favor of plaintiff as to the location of the low water mark. The findings of fact made by the trial chancellor resulted from a misinterpretation of the applicable law as announced by this Court. In a suit involving questions similar to those here involved, this Court held: "The low water mark within the intendment of our law, as related to the Ohio River, is the point to which the water recedes at its lowest stage." *Sand & Gravel Co.* v. *Northcott,* 102 W. Va. 519, 135 S. E. 589. The memorandum of opinion filed by the trial chancellor, and made a part of the record, discloses that the trial chancellor applied a different rule for the location of the low water mark, that is to say, that the low water mark of a navigable river or body of water is the "ordinary low water mark", as was held in the cases of *McBurney* v. *Young* (Vt.), 32 A. 492, 29 L. R. A. 539; *Jones* v. *Parker* (N. C.), 5 S. E. 383; *Canal Appraisers of N. Y.* v. *People,* 17 Wend 571; *Seaman* v. *Smith,* 24 Ill. 524; and *Delaplane* v. *Chicago & Northwestern Ry.,* 24 Wis. 225. We think the rule in this jurisdiction is not in accord with the holdings of the Courts in the cases just cited. The rule announced by this Court in the *Northcott* case finds support in the works of text

writers and judicial decisions. See Gould on Waters, 3d Ed., Section 45; Farnham Waters and Water Rights, page 463; *Payne Lumber Co.* v. *United States,* 55 F. 594; *Howard* v. *Ingersoll,* Opinion of Mr. Justice Wayne, 13 How. 417, 418, 14 L. Ed. 379, 417. Moreover, the rule announced in the *Northcott* case is a rule of property, and it is shown by plaintiff that he acquired the islands and the riparian rights appurtenant thereto with that rule in view for the purpose of dredging and commercially utilizing the sand and gravel lying adjacent to the islands purchased by him. We do not at this time feel disposed to modify or disapprove the principle announced in the *Northcott* case, and adopt the principle that the ordinary low water mark is the limit of a riparian owner's land. There is considerable argument that the rule in the *Northcott* case renders the location of the low water mark uncertain. The force of that argument may be conceded. Likewise the rule contended for by defendant, that of the ordinary low water mark, is subject to the same criticism. Both rules result in uncertainty as to the location of the low water mark of a navigable stream, and the facts on which such locations rest are many and varied. In locating the low water mark of the Ohio River due consideration should be given not only to the Government charts, but also to credible and competent oral testimony of persons who are acquainted with the location of such low water mark.

It is clear that the controlling question in this suit is the proper location of the low water mark of the Ohio River in the vicinity of said islands, as it existed before the raising of the water level by Dam No. 16. No question is raised by defendant as to the ownership and rights of the plaintiff. But defendant contends that plaintiff does not own the riparian rights to the extent asserted by him. We do not find any limitation in the terms of the deeds by which plaintiff acquired his ownership of the islands, and, therefore, his right as riparian owner extends down to and includes the low water mark of the Ohio River, as such low water mark was located prior to the erection of

locks and dams built by the Federal Government. *Sand & Gravel Co.* v. *Northcott, supra.*

The rule of the common law of England with reference to high and low water marks rested upon the ebb and flow of tidal waters, which could be gauged and ascertained with reasonable regularity as to time and extent. Under our system of jurisprudence there has evolved what has been referred to as "American common law", which is applicable to navigable waters wherein there is no ebb and flow of ocean tides.

We are cited to the case of *Johnson* v. *City of Charleston,* 91 W. Va. 318, 112 S. E. 577, wherein this Court in fixing the high water mark or antithesis of low water mark, used the following language: " 'The high water mark' of streams is the point below which the presence and action of the water are so common and usual and so long continued in all ordinary years as to mark upon the soil a character distinct from that of the banks with respect to vegetation as well as with respect to the soil itself."

We think there is reasonable ground for applying the "ordinary rule" announced in the *Johnson* case to high water mark, for the reason that such mark is generally observable, and, therefore, the holding of this Court in the *Johnson* case furnishes a practical and logical basis for the fixing of said high water mark. But in the instant case, the low water mark is not observable because the water covers the sand and gravel bars claimed by plaintiff on account of the construction of Dam No. 16.

If defendant entered upon the land of the plaintiff and deprived him of riparian rights by removing sand and gravel between the high and low water marks, defendant would be liable to plaintiff. *Sand & Gravel Co.* v. *Northcott, supra.* The low water mark is not changed as a matter of law by the water level maintained by locks and dams of the Federal Government. *Sand & Gravel Co.* v. *Northcott, supra.* It was therefore reversible error for the trial court to disregard the testimony on behalf of plaintiff and to apply the principle that the ordinary low water

mark fixes the same contrary to the rule laid down in the case of *Sand & Gravel Co.* v. *Northcott, supra,* and for those reasons the decree of the trial chancellor is reversed.

This cause is remanded to the Circuit Court of Wood County with direction to reinstate and perpetuate the injunction heretofore awarded, and to proceed further in this suit to ascertain the damage done to plaintiff's riparian rights by the dredging operations conducted by defendant and the taking away of sand and gravel from his lands.

*Reversed and remanded
with directions.*